## IN RE DISBARMENT OF I. A. CHMELIK.[1]

June 24, 1938.

No. 31,526.

[1]Reported in 280 N. W. 283.

*R. B. Reavill,* for State Board of Law Examiners.

PER CURIAM.

The state board of law examiners have brought this proceeding against respondent, I. A. Chmelik, an attorney at law in this state. The matter was referred to the Honorable Leonard Keyes, district judge of the eighteenth judicial district, to hear and report the evidence and to make findings.

It appears that on August 28, 1936, Kinder & Keach, attorneys at law of Akron, Ohio, acting as attorneys for the B. F. Goodrich Company, forwarded to respondent a promissory note made by one Lindall, bearing date April 17, 1934, upon which there was an unpaid balance of $67.39. Respondent was requested to "take all steps necessary to collect," and he was asked to advise the forwarders that he was giving this claim his attention. He was also informed that the legal department of the owner of the note reserved "the right to handle any countersuits growing out of collection of this item including the right to employ associate counsel or withdraw this claim." The promised fee, dependent upon collection, was ten per cent. If suit were to be brought the minimum fee was to be five dollars "plus commissions." The next letter from the same attorneys to respondent was dated September 17, 1936. Therein the forwarding attorneys requested information as to "whether or not the claim reached your office, and if so, what the prospects are of collection. Also please advise whether or not a judgment would be collectible." They again wrote on November 2, labeling the letter "IMPORTANT." The important part of the letter reads:

"Please let us know what developments have taken place and when a reduction of the claim may be expected. Client already has requested reports on several occasions."

The next letter from the same attorneys bears date November 17, 1936. In it reference is had to the prior letters mentioned; also this significant statement appears:

"Up to the present time you have continued to ignore our correspondence and we cannot understand why you do so. If you do not care to handle the account we would appreciate it if you would return it to us immediately, or if you are working on the matter, please acknowledge receipt of it and give us a report immediately so that we can let client know that it is in your hands."

A copy of that letter was forwarded to the *Mercantile Adjuster*, in which publication respondent's name appeared as an attorney at law practicing in Pine City. It further appears that on November 19, 1936, the *Mercantile Adjuster* also wrote respondent referring to this particular claim. Therein respondent was told:

"You will recall we notified you several months ago that we had placed your name in our directory as a nonsubscriber in order to fill a vacancy which we had at Pine City and we suggested that if you were not able to handle commercial matters or if you did not care to handle them, that you should notify us immediately.

"We never did hear from you. Now perhaps you have been actively engaged in adjusting the above claim and have merely failed to notify the forwarder. If this is true, won't you please write to them immediately.

"On the other hand, if you don't care to handle collections, don't you believe that it would be the proper thing for you to notify us in order that we might secure other representation in Pine City.

"For your convenience in replying to this letter we enclose a prepaid envelope."

Respondent paid no attention to any of this correspondence. His excuse is that "he has no recollection of receiving such promissory note as described in said allegation and that if correspondence pertaining to the collection of said note was had, it was not answered assuming that the holder of said note would regard said action as indicating that the respondent did not care to handle the matter." As a consequence the matter was brought to the attention of the state bar association and was referred to the chairman of the ethics and grievance committee. On January 13, 1937, he wrote respondent with regard to the complaint so made. Getting no response, he

again wrote on March 5. That, too, went unanswered. Later, on March 12, 1937, the board of law examiners took the matter in hand and caused a notice to be given respondent setting forth the charge of misconduct hereinbefore mentioned, and requested that respondent within ten days file with the secretary of the board a verified answer or statement relative thereto. This also was ignored. On April 21, 1937, the board again wrote him and directed his specific attention to the case of In re Disbarment of Breding, 188 Minn. 367, 247 N. W. 694. But respondent paid no attention to any of these letters or demands.

In his behalf the following facts should be stated: He was admitted to practice in 1922. During the next five years he was engaged as a claim adjuster for an insurance company. His services were satisfactory. In 1927 he moved to Pine City and there opened a law office. He handled "some small matters in the courts." His mother died in 1931. Thereafter, as he was the only person whom his senile father would permit to attend him, he rendered filial service to and for his father until the latter died in August, 1937. During these years he assumed full responsibility for the care of his father, including the operation of the latter's farm consisting of some 200 acres. In 1932, "on account of the increasing responsibilities to his father at home his law business was gradually dwindling away" so that in June, 1937, "he discontinued his law office and since that time has not taken on any new business but has done some work toward completing matters previously started." During these years of "his growing responsibilities to his invalid father and to secure much needed rest," respondent resorted "to the use of sedatives." The use of these drugs "produced in respondent a toxic psychosis. The symptoms of this psychosis—to-wit lack of initiative and ambition, a pleasant agreeable nature and unconcern about his usual grievances—were plainly evident at the hearing and to a great extent mirror respondent's attitude toward the matters involved in the charges made against him." In addition, the court found that in September, 1937, respondent discontinued the use of sedatives and as a result "is gradually regaining his physical and

mental health." Such are the findings of the court, and there is and can be no dispute about them.

■ A practicing lawyer may not ignore important letters coming to him in his professional capacity. His professional duty is such that failure so to do should be condemned. In re Disbarment of Gurley, 184 Minn. 450, 239 N. W. 149.

■ Even if it be conceded that there is nothing wilful in respondent's failure to attend to the business mentioned, common decency and respect for other members of his own profession required on respondent's part some adequate response to the many letters written him. The only thing to be said in mitigation is that his mental condition was such as to relieve him of the charge of wilful delinquency. What this court said in the Breding case (188 Minn. 369, 247 N. W. 695) fits the present situation:

"If counsel's delinquency as herein mentioned is due to his mental and physical condition, as seems probable, he is not in a fit condition to undertake to represent clients and maintain the standard of conduct that is demanded of one in his profession. As far as the public is concerned, irresponsibility brings the same misfortune as wilful misconduct. The public is entitled to protection from a practitioner in that mental condition, and the profession is entitled to be protected from the consequences resulting from one practicing while mentally sick."

The facts stated compel disbarment. Judgment will therefore be entered disbarring the said I. A. Chmelik, and his name will be stricken from the roll of attorneys in this state.