## IN RE DISCIPLINE OF DOUGLAS LARSON, ATTORNEY AT LAW.[1]

June 13, 1941.

No. 32,774.

[1]Reported in 298 N. W. 707.

*R. B. Reavill* and *Philip Neville,* for State Board of Law Examiners.

*A. E. Bryngelson,* for respondent.

PER CURIAM.

Proceeding by the state board of law examiners for the discipline of Douglas Larson, an attorney at law, because of professional misconduct, wherein the Honorable Albin S. Pearson, one of the judges of the second judicial district, was appointed referee.

The facts found may be thus summarized: Respondent is 39 years of age, married, has two children, and resides with his family in Minneapolis. He was admitted to practice in August, 1925. Thereafter and during the next four and one-half or five years, he practiced his profession with his father, also a Minneapolis attorney. From 1930 and until the filing on May 5, 1933, of the Greathouse decision (In re Disbarment of Greathouse, 189 Minn. 51, 248 N. W. 735), he was employed by lawyers of the ambulance-chasing type as a solicitor of personal injury cases. When the Greathouse decision was handed down he discontinued these activities and since then has not engaged in that kind of practice. During the next six years he had office arrangements with several Minneapolis lawyers but appears to have been unable to build up any substantial practice. In 1939 he was employed in nonprofessional service by a corporation at a monthly salary of $125. In September, 1940, that employment ended. Shortly thereafter he was employed as a guard on a construction project in or near Minneapolis. That employment too soon ended, and thereafter he attempted to reëstablish himself in the practice of law, but up to the time of hearing before Judge Pearson he appears to have been sadly unsuccessful.

416

The charge upon which the board principally relies arises out of the foreclosure by advertisement of a real estate mortgage, the sheriff's sale being held October 14, 1938. Due entirely to respondent's carelessness, the foreclosure record was not filed for record until December 9, 1938, much beyond the 20-day period prescribed by statute. This business had come to him through one Miss MacKenzie, with whom he was well acquainted and who was acting for the mortgage holder. After the foreclosure Miss MacKenzie asked him to return to her the recorded foreclosure record. He deliberately and falsely assured her that the record had been duly filed on October 14; that it would take several weeks to get the instrument from the register's office; but that he would promptly and faithfully attend to the matter. On December 8, 1938, Miss MacKenzie learned upon inquiry at the courthouse that the foreclosure record had not been recorded. She went to see him, and again he assured her that the record in fact had been filed on October 14 and that he would go to the register's office and find out what the trouble was. Later he told her that he had been to the courthouse, found the foreclosure record there, but that it had been mislaid by the register; that the register had checked the book wherein the payment of fees for recording of instruments is entered and that this showed that the fee had been paid on October 14. Miss MacKenzie was not convinced, so she made another visit to the courthouse on December 9 and then ascertained that the mortgage had not been filed until that day. Some two weeks later she again called, and respondent again assured her that the mortgage had been properly filed and that when the record came back it would show two filing dates, October 14 and December 9. She, however, was not to be deceived any longer. She informed him that she had seen the record at the courthouse and that it bore only one filing date, December 9. There were further conferences about the matter, and it appears that respondent finally concluded that he could no longer hoodwink Miss MacKenzie. So, finally, on December 29, 1938, he delivered the mortgage record to her with a letter in which he stated that he had arranged to have

a curative act passed by the legislature soon to be in session. This did not appeal to her, and so he gave her the choice of reforeclosing the mortgage without extra expense to the holder or refunding the money paid. She accepted the latter. Thereafter the curative act was passed. L. 1939, c. 147.

In the meantime, written complaint had been made to and filed with the ethics committee of the Hennepin County Bar Association. The committee wrote respondent many letters. He promised the committee that he would return the money received from his client, $54.48. The repayment was not made. Time after time he made new promises but failed in performance. Later he did make some payments, but the last installment was not made until January 31, 1941, when his hearing came on before Judge Pearson. The efforts of the Hennepin county ethics committee having proved unavailing, the matter was next submitted to the secretary of the board of law examiners. He, too, in behalf of the board, took the matter up with respondent in energetic fashion. But the same dilatoriness persisted. He neglected to answer communications addressed to him by the secretary of the board although his attention had been directly called to the cases of In re Disbarment of Breding, 188 Minn. 367, 247 N. W. 694; In re Disbarment of Gurley, 184 Minn. 450, 239 N. W. 149; and In re Disbarment of Chmelik, 203 Minn. 156, 280 N. W. 283. To the state board he renewed his promises of payment. His last appearance before the board was on July 11, 1940, when he again made a definite promise of payment. But that promise, like the others, was not kept, so these proceedings were commenced November 6, 1940.

In addition to his dilatoriness with respect to the foreclosure mentioned, the referee also found that respondent had been tardy in meeting promised payments to other clients whose money he had collected. These matters required pressure from other lawyers and bar committees before adjustments were made. These occurrences date back to 1933. Respondent claims that the statute has run against the older items, and that, at any rate, laches operates against their presentment now.

Even were we to grant the validity of the last mentioned claim, which we do not, the fact remains that respondent's deliberate falsehoods in the foreclosure matter were such as not only to warrant, but to compel, censure, if not disbarment. He is still a young man. He has promised to mend his ways, claiming that he has learned his lesson. We hope his reform is genuine and not merely just another promise. Naturally and properly, we are hesitant about taking a lawyer's license away from him if there is any reasonable hope that he can be trusted in the future. While the record discloses improbability of his ever becoming a useful member of the bar, nevertheless we think this is a case where justice may be tempered with mercy. We think he should be given a probationary period of *three* years, during which time it will be for him so to establish himself in his chosen profession that his conduct will not "bring upon himself, the bar, or the courts the public odium." In re Disbarment of Greathouse, 189 Minn. 51, 64, 248 N. W. 735, 741. We have a right to expect that all persons admitted to practice law have and will exercise "a keen sense of propriety." We think that "under the circumstances of this case, the proper disposition of these proceedings is to express our emphatic disapproval of respondent's" conduct and to "severely censure him therefor." We shall retain jurisdiction of these proceedings during the probationary period. If he fails to put into his practice the standards fixed by the canons of ethics of the bar association, the board of law examiners may, upon adequate notice to respondent, apply to this court for judgment of disbarment.