**In the Matter of William H. DRAPER, Jr., a member of the Bar of the State of Delaware.**

Supreme Court of Delaware.

March 20, 1974.

Andrew B. Kirkpatrick, Jr., Wilmington, for Censor Committee.

James H. Hughes, 3rd., Dover, for respondent.

Before HERRMANN, C. J., and CAREY and DUFFY, JJ.

PER CURIAM:

The Censor Committee of this Court has recommended that disciplinary action be taken by this Court against the respondent, William H. Draper, Jr., a member of the Bar of this State, for professional misconduct.

I.

After a hearing in which the respondent participated, the Censor Committee filed its Final Report containing a statement of facts substantially as follows:

The respondent was retained in 1968 by a North Carolina attorney to act for the estate of a deceased resident of that State (hereinafter the "Mix Estate"). The respondent was retained to dispose of certain Delaware properties which were part of the Estate. The respondent consummated the sale of the Delaware properties in December 1969 and February 1970, the net proceeds being $10,118.77. Thereafter, the North Carolina attorney made repeated demands upon the respondent to remit the proceeds, but to no avail. In June 1972, complaint was made to the Censor Committee. In response to inquiries by the investigating member of the Censor Committee, the respondent made repeated promises to remit the funds, but the promises were not honored. In January 1973, the North Carolina attorney came to Delaware to press the respondent personally for the funds; he, too, was given unfulfilled promises. Soon thereafter, a Delaware law firm was employed to collect the funds and, finally, in March 1973, the respondent remitted the principal amount being retained, together with interest for approximately two years.

The Censor Committee continued its investigation of the matter and, in May 1973,

a hearing was held on charges that the respondent neglected "to turn over client's funds and with neglecting legal work entrusted to him." The North Carolina forwarding attorney came to Delaware and testified at the hearing. The Committee's investigation included "the manner in which the money was handled" by the respondent from the time of receipt to the time of remittal. The hearing was continued for further investigation upon the latter facet of the matter, the investigating member of the Committee being instructed to ascertain if "the funds had been kept intact in his [the respondent's] trust account or other fiduciary account during the period of approximately two years when he had possession" of the money involved. The investigating Committee member thereafter made many unsuccessful attempts to obtain such accounting by the respondent. Another hearing was held by the Committee in July 1973, at which the respondent was subpoenaed to produce all of his records "showing the handling of the funds" which had been withheld by him from the Estate for over two years. At the hearing, the respondent furnished records showing an initial deposit of the funds.in question in a bank account titled "attorney's account", but the respondent did not present records to show that the funds so deposited remained in such segregated account until disbursed in March 1973.

The Committee notified this Court of the situation and, pursuant to the suggestion of the Committee Chairman, the Chief Justice met with him and the respondent in August 1973. At that meeting, the respondent agreed to an audit of his books and records by a certified public accountant of his choice to ascertain whether the funds here in question were properly handled by the respondent. After repeated importuning by the investigating member of the Committee, the respondent finally named the accountant to make the audit; but, the repeated requests of the Committee member and the repeated promises by the respon-

dent notwithstanding, the respondent failed to deliver to the accountant the books and records necessary for the audit.

Upon the basis of the foregoing facts, the Censor Committee's Final Report presents the following findings and conclusions:

"1. William H. Draper, Jr., Esquire, did without just reason or excuse retain funds due a client, the sum of $10,118.77 due the Charlotte Mix Estate, for a period of two years and did not turn these funds over to his client until legal action was taken against him by a Delaware law firm. The Censor Committee deems this to be a violation of Disciplinary Rule 9–102(B)4 which states that an attorney shall 'promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.'

"2. William H. Draper, Jr., Esquire, without just cause, did fail to comply with a subpoena duces tecum issued by the Censor Committee on July 27, 1973, directing him to produce all records of the handling of funds retained by him in the Charlotte Mix Estate at a hearing held on July 30, 1973.

"3. William H. Draper, Jr., Esquire, without just cause, did disregard the repeated requests of the Censor Committee to turn over the funds in the Mix Estate to his client and to account for the handling of these funds while in his possession, and failed to comply with the subpoena duces tecum issued by the Committee in this respect.

"4. William H. Draper, Jr., Esquire, without just cause and in violation of his agreement, failed to produce to a certified public accountant satisfactory evidence showing the proper handling of the funds in the Charlotte Mix Estate while in his possession.

"5. Due to the fact that William H. Draper, Jr., Esquire, has failed to show

any evidence indicating the proper handling of funds in the Charlotte Mix Estate, the Committee can only assume that such funds were improperly handled by him while in his possession. The Committee therefore finds that Mr. Draper failed to deposit and preserve in one or more identifiable bank accounts maintained by him the funds belonging to the Estate of Charlotte Mix, and to notify his client, the Executor of the Estate of Charlotte Mix, of the receipt of funds belonging to the Estate in violation of DR 9–102.

"6. The Censor Committee therefore finds that disciplinary action is warranted in this case and hereby refers the same to the Supreme Court of Delaware pursuant to Rule 32(2)(a)."

The respondent filed no exceptions to the Committee's Final Report; therefore, under Rule 32(3), Del.C.Ann. of this Court, the Final Report stands confirmed. Counsel for the Committee and for the respondent were heard in open Court.

## II.

We accept the findings of fact of the Censor Committee and agree with its conclusion that the respondent has been guilty of unprofessional conduct in that he has violated Disciplinary Rule 9–102 of the Delaware Lawyer's Code of Professional Responsibility, Del.C.Ann.* Accordingly, we accept the recommendation of the Committee that appropriate disciplinary action be taken against the respondent.

The misconduct found here, in violation of Disciplinary Rule 9–102, is reprehensible. It constitutes serious violation of the high professional standards required of every member of the Bar of this State. It reflects adversely upon the profession as a whole. Moreover, the record shows an intolerable lack of regard and respect by an officer of this Court for the processes of the Censor Committee, an arm of this Court. For such misconduct, the respondent must be severely disciplined.

■ It is the duty of this Court to protect the public against any lawyer who has demonstrated an unfitness, or a questionable fitness, to continue in the practice of the law. In the performance of that duty, and as punishment for his misconduct, we have concluded that the respondent must be suspended as a member of the Bar of this State and from any and all activity as such. The suspension shall commence forthwith and shall continue until such time, not to exceed six months from the date hereof, as a satisfactory audit report of the respondent's books and records, by a certified public accountant, shall be received by the Censor Committee from the respondent, showing compliance by him

* Disciplinary Rule 9–102 provides as follows:
"DR 9–102. Preserving Identity of Funds and Property of a Client
"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
"(B) A lawyer shall:
"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
"(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

 

with Disciplinary Rule 9–102 as to the funds of all clients, including the Mix Estate. Further report and recommendation shall be made to this Court by the Censor Committee not later than four months from the date hereof. At that time, consideration will be given to such further disciplinary action as the situation then found to exist may dictate.

A member of the Kent County Bar will be requested by this Court to take the necessary action to protect the interests of all clients of the respondent in matters now pending in his office; and the respondent will be directed to cooperate fully with that attorney to that end.