**In the Matter of the Application for the Discipline of Joseph E. CARTWRIGHT, an Attorney at Law of the State of Minnesota.**

No. 49213.

Supreme Court of Minnesota.

July 27, 1979.

R. Walter Bachman, Jr., Administrative Director on Professional Conduct, Michael J. Hoover, Staff Atty., Lawyers Professional Responsibility Bd., St. Paul, for appellant.

Joseph Cartwright, pro se.

PER CURIAM.

The administrative director of the Lawyers Professional Responsibility Board (Board) petitioned this court to take disciplinary action against respondent, Joseph E. Cartwright. The Board's petition for disciplinary action was referred to Retired Judge Clarence A. Rolloff for hearing. After hearing, Judge Rolloff made his findings of fact and conclusions of law, and recommended that respondent be suspended from the practice of law for a period of three years.

In its petition for disciplinary action, the Board specified five complaints against respondent. In his answer to the petition, respondent denies the allegations of professional misconduct and raises various defenses. This court's review of the matter is limited by the operation of Rule 14(d), Rules of Lawyers Professional Responsibility. That rule provides, in part, that:

> "(d) Referee's findings, conclusions, and recommendations. The referee shall make findings of fact, conclusions, and recommendations, file them with this Court, and notify the respondent and Director of them. Unless the respondent or director within five days orders a transcript and so notifies this Court, the findings of fact and conclusions shall be conclusive."

In this case respondent has not ordered a transcript of the proceedings held before the referee. Thus, pursuant to the above rule, the referee's factual findings and conclusions are conclusive. *Application for the Disbarment of Hetland*, 275 N.W.2d 582 (Minn.1978). These findings and conclusions can be summarized as follows:

Complaints 1 through 4 all arise out of respondent's complete lack of cooperation with the Lawyers Professional Responsibility Board in its investigation of ethics complaints lodged against him by various members of the public.[1]

1. The substance of these complaints is not at issue here. It should be noted, however, that these complaints were either terminated in respondent's favor or not pursued by the Board.

The first complaint arises from a charge of unprofessional conduct lodged by James Edmunds, director of the Ramsey County Welfare Department, in January 1976.[2] The Ramsey County District Ethics Committee recommended that the Board dismiss this complaint. On September 22, 1977, after receiving that recommendation, the administrative director of the Board wrote respondent and asked that he specifically respond to Mr. Edmunds' charge of unprofessional conduct. Respondent failed to reply to that letter, and a second letter was sent on October 6, 1977. On October 19, 1977, respondent replied, saying that he could supply an answer "hopefully" by the end of the month. The Board's administrative director again wrote to respondent on October 25, November 3, and November 29, 1977, seeking respondent's answer. On December 7, 1977, respondent finally replied, in the form of a one-paragraph response to the original September 22, 1977, request for information. Based in part on that belated response, the charge was dismissed.

As a consequence of respondent's repeated failures to answer the Board's correspondence, he was sent a private letter of warning, pursuant to Rule 8(c)(2), Rules of Lawyers Professional Responsibility. After reciting the history of the correspondence, the letter of warning stated:

"Your repeated failure to respond to my inquiries, and your failure to cooperate with the investigation conducted by this office, and the fact that you responded only when formal disciplinary proceedings were threatened, constitute repeated violations of DR 1–102(A)(5) and DR 1–102(A)(6) of the Code of Professional Responsibility, and the holding in *In re Chmelik*, 203 Minn. 156, 280 N.W. 283 (1931)."

The warning letter also advised respondent of his right to appeal from the warning by demanding a hearing before a panel of the Lawyers Professional Responsibility Board. He never demanded a hearing, although he acknowledged at the hearing that he received and read the warning.

The second complaint arises from a charge of unprofessional conduct made by Mrs. William Kenafick.[3] A copy of Mrs. Kenafick's letter of complaint was sent to respondent with a letter from Michael J. Hoover, staff attorney for the Board, dated December 6, 1977. Respondent was asked to respond to the complaint and to reply to certain questions raised by the letter of complaint. The letter requested that respondent reply by December 20, 1977. On December 20 respondent called Mr. Hoover and requested that he be granted an extension of time until December 23, 1977, to answer. Receiving no response by December 27, 1977, Mr. Hoover again wrote to respondent on January 6, 1978. This letter specifically reminded respondent that:

"You have previously been informed by this office that failure or refusal to respond to a written request for information is itself unprofessional conduct."

Respondent never answered this letter and, at the hearing, informed Referee Rolloff that he never had any intention of responding to the Board's inquiries because he felt that they had not conducted an investigation which he deemed sufficient to require a reply from him as an attorney.

Because respondent failed to reply to the complaint lodged by Mrs. Kenafick, a formal complaint was drawn and a hearing set before a panel of the Lawyers Professional Responsibility Board for February 10, 1978. At the hearing the Board considered both the allegations of Mrs. Kenafick and re-

---

2. Mr. Edmunds charged that respondent made certain statements allegedly contrary to the interests of the Ramsey County Welfare Department while appearing in Federal court in his capacity as an Assistant Ramsey County Attorney representing the Welfare Department. Respondent has since resigned his position as Assistant County Attorney and has written a book about welfare fraud in Ramsey County.

3. Mrs. Kenafick charged that she had retained respondent to secure custody or visitation rights in regard to her great-grandchild. She claimed that she had paid respondent $500 and that he had done nothing for her and repeatedly refused to return her phone calls.

spondent's noncooperation with the investigation of complaints against him. Following the formal hearing, the Board concluded that Mrs. Kenafick's complaints of unethical conduct should be dismissed, but directed its staff to issue a warning to respondent. This second warning again informed respondent that the Board considered his refusal to respond to their inquiries a violation of DR 1–102(A)(5) and (6) of the Code of Professional Responsibility.

The Board's third complaint arises from this same charge of unprofessional conduct. Following dismissal of her complaint against respondent, Mrs. Kenafick exercised her right, pursuant to Rule 6(c), Rules of Lawyers Professional Responsibility, to ask for a review of that dismissal by the Attorney General of the State of Minnesota. Mr. Alan A. Held, Special Assistant Attorney General, was assigned to review the matter. Thereafter, Mr. Held wrote to respondent by letters dated February 17 and March 22, 1978, requesting certain information from respondent to assist in reviewing the matter. At the hearing, respondent acknowledged that he received these letters but decided not to reply because he felt Mr. Held should investigate the matter in a different fashion. At some point, however, respondent spoke to Mr. Held on the telephone and promised to send written materials pertaining to the complaint and also promised to make a partial refund of the $500 fee he had received from Mrs. Kenafick.

Notwithstanding the follow-up letters and telephone calls from Mr. Held during April, May, and June, 1978, respondent never sent the requested material. Moreover, at the hearing he acknowledged that he had never offered to make a partial refund to Mrs. Kenafick as he had promised Mr. Held he would do. Mr. Held returned the file regarding Mrs. Kenafick's complaint to the Board with a letter dated June 27, 1978, stating that respondent had repeatedly

failed to cooperate with the requests for information.

The fourth complaint arises from a charge against respondent in February 1978 by Mr. Keith Esget, general manager of Swingle's Furniture Rental, Inc.[4] On February 16, 1978, Mr. Hoover wrote to respondent, enclosing a copy of the new complaint and asking for a response to it by March 1, 1978. Respondent acknowledged that he received the letter and made no effort to reply to it. Based upon independent investigation, Mr. Hoover determined that Swingle's did not desire to pursue its complaint against respondent. By letter dated March 9, 1978, Mr. Hoover informed respondent that the matter was being closed, but again cautioned him that the Board considered his failure to respond to their inquiries to constitute unethical conduct.

Based on these facts, Referee Rolloff concluded that:

"Respondent's persistent and repeated conduct in refusing to cooperate with inquiries by appropriate designated authorities into complaints of unprofessional conduct filed against him constitutes unethical conduct, in violation of DR 1–102(A)(5) and (6)." [5]

Based on respondent's occasional promises to supply the Board with information, Referee Rolloff further concluded that:

"Although Respondent now attempts to defend his noncooperation as being a conscious act of principle, taken in reliance upon Respondent's interpretation of the Rules on Lawyers Professional Responsibility, his present position appears to be more an after-the-fact rationalization for repeated failure to respond."

The Board's fifth complaint against respondent arises out of a charge of unprofessional conduct lodged by respondent's cousin, Gary Gault. Respondent borrowed $10,800 from his cousin on August 1, 1975. He evidenced this obligation by executing a

---

**4.** Mr. Esget alleged that respondent had rented office furniture from Swingle's, but that he now refused to pay the rent or return the furniture.

**5.** DR 1–102(A)(5) and (6) provide that:
  "(A) A lawyer shall not:

\* \* \* \* \* \*

  "(5) Engage in conduct that is prejudicial to the administration of justice.
  "(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

promissory note and promised to secure the loan by naming his cousin a beneficiary on a life insurance policy.[6]  On January 1, 1976, respondent paid Gault the sum of $5,333.30 and executed a second promissory note, in the sum of $5,400, payable on or before December 31, 1976.  When the second promissory note came due on December 31, 1976, respondent paid Mr. Gault $400, leaving a balance due of $5,000.  No new note was issued at that time, and Gault agreed to continue the loan orally, with the understanding that it would be repaid upon demand.  In the summer of 1977, Mr. Gault asked respondent to pay the $5,000 note by September 1, 1977.  Although respondent agreed to this, he failed to repay any of the outstanding loan.

After his personal attempts to collect the loan failed, Mr. Gault sought the aid of an attorney.  Eventually Gault commenced a civil action against respondent.  Although respondent admitted in a letter to Gault's parents that he owed Gault the money, he interposed an answer in the civil suit setting forth a general denial and raising various affirmative defenses.  Thereafter respondent never answered Gault's interrogatories or requests for admissions, and allowed judgment to be entered against himself for the entire amount due on the loan.

Referee Rolloff found that respondent's promises to Gault that his personal loan was secured by naming Gault as a beneficiary on a policy of life insurance, made at times when he knew that Gault had not been designated as a beneficiary, and respondent's failure to notify Gault that the policy had been permitted to lapse constituted violations of DR 1–102(A)(4)[7] and (6) of the Code of Professional Responsibility.  The referee further found that respondent's general denial answer, coupled with the as-

sertion of numerous affirmative defenses, which he knew or should have known were false, constituted the filing of an answer and defenses solely for purposes of hindrance and delay, in violation of DR 1–102(A)(4), DR 1–102(A)(5), and DR 7–102(A)(1),[8] of the Code of Professional Responsibility.

At oral argument respondent informed the court that he had made arrangements to repay Gault.  He candidly admitted that his conduct throughout the loan transaction was improper and indicated that he would willingly submit to any punishment imposed as a result of this complaint.  Consequently, the only issue presented by this matter is whether respondent's repeated refusals to cooperate with the appropriate disciplinary authorities concerning ethics complaints filed against him constitute unprofessional conduct.

This question is not new to the court.  We have long recognized that it is incumbent upon an attorney to cooperate with disciplinary authorities in their investigation and resolution of complaints against him.  *In re Discipline of Douglas Larson,* 210 Minn. 414, 298 N.W. 707 (1941); *In re Disbarment of I. A. Chmelik,* 203 Minn. 156, 280 N.W. 283 (1938); *In re Disbarment of A. M. Breding,* 188 Minn. 367, 247 N.W. 694 (1933); *In re Disbarment of George P. Gurley,* 184 Minn. 450, 239 N.W. 149 (1931).  As was summarized by the court in the case of *In re Breding:*

"Relative to the complaint of said client and the complaint of another aggrieved client, which is also involved in her proceedings, but concerning which the referee has substantially exonerated counsel, the chairman of the ethics committee of the state bar association, the secretary of the state board of law exam-

---

**6.** Referee Rolloff found that respondent failed to complete the forms which would have named Mr. Gault a beneficiary.  Further, the referee found that respondent allowed the insurance policy in question to lapse.

**7.** DR1–102(A)(4) provides that:
"(A) A lawyer shall not:
    *   *   *   *   *   *
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

**8.** DR 7–102(A)(1) provides that:
"(A) In his representation of a client, a lawyer shall not:
"(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

iners, and the secretary of the ethics committee of the Hennepin county bar association wrote counsel many letters which were ignored by him. They asked him to come before certain committees and make explanation, but this he failed to do. *They were giving their time and services to maintain a high standard in the legal profession and were entitled to expect at least a courteous response and a prompt cooperation.* Counsel failed in his duty toward these officials." 188 Minn. 368, 247 N.W. 694 (emphasis added).

Here, respondent's conduct throughout the various investigations of the charges against him shows a complete disdain for the disciplinary process. Not only did he choose to ignore the bulk of the correspondence coming to him from the various authorities, but on those occasions when he did promise cooperation, his promises were never fulfilled. Accordingly, the referee was correct in concluding that respondent's complete failure to cooperate with the disciplinary authorities constituted a separate act of professional misconduct.

We note that Minnesota is not alone in imposing a duty upon attorneys to cooperate in investigations of their alleged professional misconduct. See, e. g., *In re Draper,* 317 A.2d 106 (Del.1974); *In re Talbot,* 78 Wash.2d 295, 474 P.2d 88 (1970); *In the Matter of Disciplinary Proceedings Against Elliot,* 83 Wis.2d 904, 266 N.W.2d 430 (1978). In fact, other courts have expressly adopted rules requiring cooperation by an attorney under investigation and providing that failure to do so is a separate act of misconduct. For example, Rule 2.6, Discipline Rules for Attorneys, 10 Washington Court Rules (1978), provides that:

"  *  *  * It shall be the duty and the obligation of an attorney who is the subject of a disciplinary investigation to cooperate with the Local Administrative Committee, State Bar Counsel or bar staff as requested, subject only to the proper exercise of his privilege against self-incrimination where applicable, by:

(a) Furnishing any papers or documents;

(b) Furnishing in writing a full and complete explanation covering the matter contained in such complaint; and

(c) Appearing before the Committee at the time and place designated." [9]

Such a rule is desirable in that it clearly delineates the scope of the attorney's duty, and we suggest that the Lawyers Professional Responsibility Board draft such a rule for submission to this court.

In conclusion, we adopt the referee's findings and conclusions insofar as he found that respondent violated mandatory ethical standards. Based upon our careful consideration of the record, we order that respondent's license to practice law be suspended for a period of six months from the date of this opinion.

---

9.  See also, Rule 7(b), Wisconsin Rules Governing Enforcement of Attorneys' Professional Responsibility, Wis.Stat.Ann., c. 256, Appendix.