In the Matter of the Application for the Discipline of Jerald Barton WOLFSON, an Attorney at Law of the State of Minnesota.

No. 50711.

Supreme Court of Minnesota.

Dec. 17, 1981.

Michael J. Hoover, Director of Lawyers Professional Responsibility, Janet Dolan, Asst. Director, St. Paul, for appellant.

Weyhrich & Maki, and W. Dale Weyhrich, Minneapolis, for respondent.

Jerald B. Wolfson, pro se.

PER CURIAM.

On November 7, 1979, the Lawyers Professional Responsibility Board (hereinafter "the Board") filed a petition with this court for the discipline of attorney Jerald Barton Wolfson. On the same day, the Board, with Wolfson's approval by stipulation, filed a petition for Wolfson's immediate suspension from the practice of law; the order for that suspension issued immediately.

The Board's attorney took Wolfson's deposition on March 30, 1981. Honorable C. Rolloff, disciplinary referee, held the disciplinary hearing on May 12–13, 1981, and

later issued findings of fact, conclusions, and a recommendation for disbarment.

Respondent Wolfson, following that hearing, did not file a brief with this court. However, on August 26, 1981, respondent filed an application for an order to vacate the referee's findings and to suspend these proceedings. The Board filed an opposing memo on August 28. We issued an order on September 1 denying respondent's petition and directing him to appear for oral argument as scheduled on September 11, 1981. Following oral argument before this court on September 11, 1981, we issued an order dated September 16, 1981, granting respondent a delay in our consideration of the case. That order allowed respondent to order a hearing transcript within seven (7) days of September 16, provided that respondent pay the estimated cost of the transcript at the time he ordered the same, notify this court immediately upon his ordering the transcript, and file his brief within 31 days of his receipt of the transcript. Absent special permission by this court, respondent's brief was to be filed no later than November 16, 1981.

To this date, this court has not received a copy of either the transcript or respondent's brief. We have been notified by the court reporter that, although the transcript was prepared at the request of respondent, respondent paid with a check returned by the bank marked "non-sufficient funds." The only response from respondent to this court's order of September 16 was a telephone call from respondent to the court clerk's office on Friday, December 4, requesting a continuance of ten (10) working days. Since receipt of that call, more than ten (10) working days have elapsed.

Accordingly, we accept as conclusive the findings of fact and conclusions of the referee. *See* Minn. R. Lawyers Professional Responsibility 14(d); *In re Cartwright*, 282 N.W.2d 548, 548 (Minn.1979); *In re Hetland*, 275 N.W.2d 582, 583 (Minn.1978). The referee's findings, conclusions and recommendation, along with an attached memorandum, are set out in full as an appendix to this opinion.

This court's experiences with respondent are strikingly similar to those noted in the findings and conclusions of Judge Rolloff. Respondent's continuing failure to comply with this court's orders, together with his abuse of the legal process, as found by the referee, require—indeed compel—respondent's disbarment.

Respondent is herewith disbarred from practice before all of the courts in this state.

## APPENDIX

### STATE OF MINNESOTA

### IN SUPREME COURT

### FILE NO. 50711

### FINDINGS OF FACT, CONCLUSIONS, AND RECOMMENDATION

This matter was heard by the undersigned in Minneapolis, Minnesota, on May 12 and 13, 1981, pursuant to the Court's Order of Appointment.

Bruce E. Martin, Assistant Director, appeared on behalf of Michael J. Hoover, Director of Lawyers Professional Responsibility, hereinafter Petitioner. Jerald Barton Wolfson, hereinafter Respondent, appeared in person and was represented by W. Dale Weyhrich. After hearing, leave was granted to file briefs and proposed findings.

Based upon all files, records and proceedings herein, and pursuant to Rule 14, Rules on Lawyers Professional Responsibility, the following are hereby made as

### FINDINGS OF FACT

#### I.

Respondent received his L.L.B. degree from Drake University in 1958, and was admitted to practice in Minnesota in 1959. In 1960, from 1963 through 1967, and from 1971 through 1979, Respondent was engaged in the private practice of law in Minnesota. In 1970, Respondent practiced with a law firm in Des Moines, Iowa.

## II.

In November, 1979, Respondent was suspended from Minnesota practice, pending completion of these disciplinary proceedings. Respondent now lives in Iowa, and is attempting to organize an import/export business. (Respondent's testimony).

## III.

COMPLAINT NO. 1

A. In May, 1976, Respondent hired Roger A. Gershin to work as a law clerk for Respondent, and to work for real estate corporations with which Respondent was associated. Respondent personally guaranteed payment of Gershin's wages for work performed for Respondent and the corporations. (Gershin testimony).

B. From November, 1976, through March, 1977, Gershin attempted to collect from Respondent back wages owed by Respondent and the corporations. Respondent repeatedly promised to pay Gershin, but failed to do so. Respondent failed to return Gershin's phone calls, and refused to see Gershin. (Gershin testimony).

C. Gershin obtained a conciliation court judgment against Respondent for $300 wages and $360 punitive damages. In July, 1977, Respondent appealed the judgment by removing the action to municipal court. Respondent alleged in his municipal court answer that Gershin had failed to account for funds, and had acted without good faith. (Petitioner's Exhibit 2).

D. Respondent had not asked Gershin to account for any funds. On or about November 27, 1977, Respondent admitted to Gershin and the municipal Court judge that there was no basis for Respondent's allegations that Gershin failed to account for funds and acted without good faith. (Gershin·testimony).

E. In September, 1977, Respondent filed in the municipal court action a Notice of Taking of Deposition dated September 9, 1977. The notice listed James Murphy as attorney for Respondent. (Petitioner's Exhibit 4). Murphy had not given Respondent permission to use Murphy's name on the notice. Respondent informed Murphy of the identity of the parties in and the nature of the municipal court action only on the day of the deposition. (Murphy testimony).

F. On or about November 27, 1977, Respondent stipulated with Gershin that Respondent would pay the judgment on or before December 12, 1977. (Gershin testimony). On November 30, 1977, Respondent paid Gershin $200 by check drawn on Respondent's trust account. (Petitioner's Exhibit 5). The remainder of the judgment was not paid until January, 1978. (Gershin testimony).

## IV.

COMPLAINT NO. 2

A. Prior to March, 1977, Respondent represented Radisson Realty, Inc., a corporation owned and operated by Clyde Gould.

B. In February or March, 1977, Respondent asked Gould for a $1,000 loan, and represented to Gould that the loan was required for medical treatment of Respondent's daughter. (Gould testimony).

C. Gould was not able to loan Respondent the money, but arranged for a loan to Respondent at Riverside Community State Bank of Minneapolis. (Gould testimony). In order for Respondent to obtain the loan, Gould had to personally guarantee its payment. (David E. Cleveland testimony). Gould relied upon Respondent's position as a lawyer and Respondent's representation that the loan was for medical purposes in deciding to guarantee the loan.

D. At Respondent's request, the loan was made not to Respondent, but to University Book Store Corporation, a corporation owned and operated by Respondent's wife. (Cleveland testimony; Respondent's testimony). The loan proceeds were used not for medical treatment of Respondent's daughter, but for Respondent's wife's business. (Respondent's testimony).

E. Respondent did not disclose to Gould that the loan was not made to Respondent and that the loan proceeds were not used for medical treatment of Respondent's

daughter. Gould did not know that the loan was not made to Respondent until default on the note occurred in spring, 1977. (Gould testimony).

F. The bank renewed the note in June, 1977, after Respondent personally guaranteed the note's payment. Payment was not made when the note became due on September 15, 1977. Respondent repeatedly promised payment to the bank's president, but failed to make such payment. (Cleveland testimony).

G. In December, 1977, the bank required Gould to pay the note. (Cleveland testimony; Petitioner's Exhibit 9). Gould paid the note, and commenced a conciliation court action against Respondent. (Gould testimony).

H. Gould obtained a $832.61 conciliation court judgment against Respondent. (Petitioner's Exhibit 11). Respondent then removed the action to municipal court by filing an answer alleging that Respondent's signature was obtained on the renewal note by misrepresentation and without consideration. Neither the bank nor Gould made any misrepresentation to Respondent concerning the note. (Gould and Cleveland testimony).

## V.

### COMPLAINT NO. 3

A. In early 1976, Reuben J. Early hired Respondent to represent Early in a federal civil rights action commenced in 1975. (Respondent's testimony). Respondent filed a First Amended Complaint. (Petitioner's Exhibit 24).

B. In June, 1976, adverse counsel served Interrogatories upon Respondent, asking the name and address of each person having knowledge of facts concerning the action. (Petitioner's Exhibit 26). Respondent's office prepared and filed Answers to Interrogatories listing thirteen persons having such knowledge. (Petitioner's Exhibit 27).

C. The action was scheduled for trial in June, 1977. When the trial was continued in spring, 1977, Respondent had contacted only one or two of the witnesses listed in the Interrogatories. (Respondent's testimony).

D. On October 21, 1977, the court issued an order directing Respondent to submit a status report. Respondent failed to comply with the order, and testified during the referee's hearing that he had no reason for his failure. (Petitioner's Exhibit 29; Respondent's testimony).

E. Respondent moved his law office in the spring of 1977, and failed to notify the federal court or Early of the move. Respondent failed to return Early's phone calls in the summer and fall of 1977. At the referee's hearing, Respondent admitted he failed to keep Early advised of the status of the action. (Respondent's testimony).

F. In October, 1977, Early discharged Respondent and requested return of the file. (Respondent's testimony). Respondent delivered the file in December, 1977, only after additional requests from Early, Petitioner, and another lawyer contacted by Early. (Petitioner's Exhibits 30, 31, and 32).

G. On December 12, 1977, Respondent represented to Petitioner that Respondent had arranged with Bruce Candlin, a lawyer, to handle the June, 1977 trial, and that Candlin had agreed to be principal trial counsel. Although Respondent discussed the matter with Candlin, Candlin had not agreed to be principal trial counsel. (Respondent's testimony; Petitioner's Exhibit 28).

## VI.

### COMPLAINT NO. 4

A. Prior to November, 1977, judgment was entered against Respondent in favor of Rotter Carlson Agency, Inc., in Hennepin County Conciliation Court concerning an insurance policy. In November, 1977, a municipal court judgment was entered against Respondent on his appeal from conciliation court. (Respondent's testimony).

B. Respondent did not appeal the municipal court judgment. In March, 1978, after the judgment creditor attempted to

enforce the judgment against Respondent through supplementary proceedings, Respondent commenced a district court action against the judgment creditor, alleging fraud, perjury and forgery of Respondent's signature on the insurance application. (Respondent's testimony).

C. Respondent was present during the trial of the municipal court action when the issues of fraud and forgery were presented to the court. (Respondent's testimony).

## VII.

COMPLAINT NO. 5

A. On January 15, 1976, Thomas E. Rhode obtained a $42.50 conciliation court judgment against Respondent. (Rhode testimony). Respondent was notified of the judgment, but did not appeal. (Respondent's testimony).

B. In September, 1977, Rhode complained to Petitioner that Respondent had not paid the judgment. (Rhode testimony).

C. On January 15, 1979, Respondent commenced a district court action against Rhode alleging that the 1976 judgment was obtained by false statements and misrepresentations by Rhode. Respondent prayed for damages of $10,000 for injury to credit and reputation, $10,000 for abuse of process, $10,000 for violation of fair credit billing act, $10,000 for violation of the truth and lending act, and $10,000 for violation of the usury act. (Petitioner's Exhibit 19).

D. Rhode hired Jerome Raidt, a lawyer, to represent Rhode in the district court action. (Rhode testimony). Respondent informed Raidt that if Rhode provided Respondent a written apology and withdrew the ethics complaint filed with Petitioner, Respondent would dismiss the district court action. (Jerome Raidt testimony).

## VIII.

TRUST ACCOUNT

A. In 1977 and 1978 Respondent maintained First Produce State Bank, Minneapolis, Minnesota, checking account #2340–877. The account was designated a trust account, and was used by Respondent to hold funds held on behalf of clients. (Respondent's testimony).

B. Respondent failed to maintain proper books and records concerning his trust account, including subsidiary client ledgers and monthly account balances. (Respondent's testimony).

C. Respondent repeatedly commingled his personal and business funds, and those of corporations with which Respondent was associated, with client funds held in the trust account. Deposit slips from Respondent's trust account are not marked to indicate the source of funds deposited. (Petitioner's Exhibits 34 and 35). Checks written by Respondent on his trust account do not indicate whether they are for client funds or those of Respondent. (Petitioner's Exhibits 39 and 40).

D. Respondent's trust account was frequently overdrawn. Respondent testified that he would learn of the overdrafts when he received notices from the bank, and would then obtain funds from the corporations with which he was associated to cover the overdrafts. Respondent testified that the $200 check drawn on his trust account for payment of the Gershin settlement consisted of funds of one of the corporations, but admitted he was not able to allocate the $200 to a specific corporation. (Respondent's testimony).

## CONCLUSIONS

As conclusions from the facts so found, it is considered that:

## I.

COMPLAINT NO. 1

A. Respondent's conduct in repeatedly promising to pay Gershin, and then failing to make such payment, together with his failure to return Gershin's phone calls and refusal to see Gershin, violated DR 1–102(A)(1), and DR 1–102(A)(6), Minnesota Code of Professional Responsibility (M.C.P. R.).

B. In his July, 1977 municipal court answer, Respondent intentionally falsely alleged that Gershin failed to account for funds and acted without good faith. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(4), DR 1–102(A)(5), DR 1–102(A)(6), DR 7–102(A)(1), DR 7–102(A)(5), and DR 7–102(A)(8), M.C.P.R.

C. Respondent designated James Murphy as his attorney in the Notice of Taking Deposition without Murphy's knowledge, authorization or consent. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), and DR 1–102(A)(6), M.C.P.R.

## II.

COMPLAINT NO. 2

A. Respondent misrepresented to Gould the purpose for the $1,000 loan requested by Respondent. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(4), and DR 1–102(A)(6), M.C.P.R.

B. Respondent failed to disclose to Gould the recipient of the loan proceeds and the purpose to which they were placed, when Respondent knew, or should have known, that Gould relied upon Respondent's representation that the loan was a personal loan to Respondent to enable him to obtain medical treatment for his daughter. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(4), and DR 1–102(A)(5), M.C.P.R.

C. Respondent's allegation in his March 29, 1979 municipal court answer that his signature was obtained on the renewal note by misrepresentation and without consideration was made solely to harass or maliciously injure Gould. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 7–102(A)(1), and DR 7–102(A)(8), M.C.P.R.

## III.

COMPLAINT NO. 3

A. Respondent failed to contact all parties known by him to have knowledge of Early's civil rights action, and failed to comply with the federal court's order to submit a status report. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 6–101(A)(2), DR 6–101(A)(3), DR 7–101(A)(1), and DR 7–101(A)(2), M.C.P.R.

B. Respondent failed to maintain proper communications with Early. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), and DR 1–102(A)(6), M.C.P.R.

C. Respondent's failure to promptly deliver to Early the federal civil rights action file violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), and DR [2–110(A)(2)], M.C.P.R.

D. Respondent's December 12, 1977 representation to Petitioner that Respondent had arranged for another lawyer to try the federal civil rights action was misleading, and an attempt by Respondent to falsely characterize his actions. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(4), DR 1–102(A)(5), and DR 1–102(A)(6), M.C.P.R.

## IV.

COMPLAINT NO. 4

A. Respondent's purpose in filing the district court action against Rotter Carlson Agency, Inc., was solely to delay execution on the judgment. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 7–102(A)(1), and DR 7–102(A)(2), M.C.P.R.

## V.

COMPLAINT NO. 5

A. Respondent filed the district court action against Rhode solely to harass Rhode and prevent him from receiving payment on the judgment. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 7–102(A)(1), and DR 7–102(A)(2), M.C.P.R.

B. Respondent's offer to dismiss the district court action if Rhode withdrew his ethics complaint was an attempt to obstruct an investigation being conducted by Petitioner. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), and DR 1–

102(A)(6), M.C.P.R., and *In re Cartwright*, 282 N.W.2d 548 (Minn.1979).

## VI.

## TRUST ACCOUNT

A. Respondent repeatedly commingled his personal and business funds with those held on behalf of clients. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 9–102(A), and DR 9–102(B), M.C.P.R.

B. Respondent failed to maintain proper and complete books and records regarding his trust account; a failure which renders reconciliation of that account impossible. Respondent's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 9–102(A), DR 9–102(B) and DR 9–103, M.C.P.R.

## RECOMMENDATION

That the Respondent be disbarred.

Dated: June 19, 1981.

/s/   C. A. Rolloff
C. A. ROLLOFF
District Court Judge—Retired
Referee

## MEMORANDUM

Respondent's testimony lacks a certain degree of candor. Respondent's actions involve dishonesty, neglect and repeated abuse of legal process. Respondent has not hesitated to use his knowledge and skill as a lawyer for improper purposes. Respondent has repeatedly filed false pleadings and taken positions in litigation for the sole purpose of harassing his opponent. Respondent's allegation that Gershin had not accounted for funds and not acted in good faith was false and he knew it. His failure to disclose to Gould the true purpose of the loan was an act of dishonesty. His failure to respond to the order of the Federal District Court shows a total disregard of his obligations as a lawyer. Respondent's statement that he would dismiss the District Court action against Rhode upon a written apology and withdrawal of the ethics complaint was wrongful and shows a total disregard for the disciplinary process. The petitioner gave notice of taking the deposition of Respondent. Respondent failed to appear. It was necessary for the Petitioner to secure an Order from the Referee to compel Respondent to submit being deposed. The totality of Respondent's conduct indicates a complete disregard of the professional standards expected of a practicing lawyer.

C.A.R.