In re Petition for DISCIPLINARY AC-
TION AGAINST Rodney J. OLSON, an
Attorney at Law of the State of Minne-
sota.

No. C0–95–2044.

Supreme Court of Minnesota.

March 22, 1996.

Henry C. Granison, Asst. Director, Office
of Lawyers Professional Responsibility, St.
Paul, for appellant.

Rodney J. Olson, Minneapolis, pro se.

## OPINION

PER CURIAM.

On September 21, 1995, the Director of the
Office of Lawyers Professional Responsibility
filed a petition for disciplinary action against
respondent, Rodney J. Olson. This petition
alleged two counts of unprofessional conduct
against Olson. On October 27, 1995, based
on a separate set of facts, the Director filed a
supplementary petition against Olson. This
second petition alleged two additional counts
of unprofessional conduct.

Olson never responded to either petition.
Therefore, on November 22, 1995, the Di-
rector filed a motion for summary relief re-
questing that the allegations of both petitions
be deemed admitted pursuant to Rule 13(b),
Rules on Lawyers Professional Responsibili-
ty. On December 27, 1995, this court grant-
ed the Director's motion.

The Director's petitions are based on two
separate sets of facts. The first petition
arises from Olson's representation of Mavis
Gowell on a worker's compensation claim.
After a hearing, Gowell was awarded perma-
nent partial disability benefits and perma-
nent total disability benefits. This decision
was appealed to the Workers' Compensation
Court of Appeals (WCCA), and on April 18,
1994, the appellant in the case, Gowell's em-

ployer, filed a brief with the WCCA. In April of 1994, Gowell called Olson and requested a copy of the brief her employer had filed. Olson informed Gowell that the brief was too lengthy to copy and did not forward a copy.

On June 17, 1994, Gowell phoned Olson and requested a copy of the brief he had filed on her behalf. Olson informed Gowell that the brief was quite short and he would not send her a copy. In fact, Olson never filed a brief, even after the WCCA granted him an extension of time in which to do so. On August 9, 1994, the WCCA reversed Gowell's award of permanent total disability benefits and remanded her award for permanent partial disability benefits for further review.

Upon inquiry to the WCCA, Gowell discovered that Olson had never filed a brief. When she questioned him about this, he told her that his computer had damaged his brief, which caused him not to file. On August 31, 1994, Gowell discharged Olson and asked him to send her client file to her new attorney. Olson failed to execute a substitution of counsel form or send Gowell's client file to her new attorney until December 1994.

Gowell subsequently filed a complaint with the Director. On December 16, 1994, the Director mailed a notice of investigation and a copy of Gowell's complaint to Olson. The Director requested that he respond to the district ethics committee (DEC) investigator within 14 days of the notice. Even after numerous extensions and mail and phone inquiries from the DEC investigator, Olson never responded.

The Director's office set up two separate meetings with Olson to discuss the latter's failure to respond. Olson attended neither meeting. On July 31, 1995, Olson was mailed charges of unprofessional conduct and notice of a pre-hearing meeting requiring his attendance. He neither attended the meeting nor contacted the Director's Office concerning his absence.

Count I of the Director's petition alleges that: (1) Olson's failure to both adequately communicate with Gowell and provide her with a copy of the opposing party's brief violated Minn.R.Prof.Conduct 1.4(a) [1]; (2) Olson's misrepresentation to Gowell about his filing of a brief with the WCCA violated Minn.R.Prof.Conduct 4.1 and 8.4(c) [2]; (3) Olson's failure to submit a brief to the WCCA on behalf of Gowell violated Minn.R.Prof.Conduct 1.3 and 3.2 [3]; and (4) Olson's conduct in taking four months to transfer Gowell's client file to her new attorney violated Lawyers Professional Responsibility Board Opinion No. 13, and Minn.R.Prof.Conduct 1.16(d).[4]

Count II alleges that Olson's failure to submit a written response to Gowell's complaint, failure to attend two meetings at the Director's office, and failure to attend the August 17 pre-hearing meeting violated Minn.R.Prof.Conduct 8.1(a)(3) and 8.4(d); Rule 25, Rules on Lawyers Professional Responsibility; and *In re Cartwright,* 282 N.W.2d 548 (Minn.1979).[5]

---

1. Rule 1.4(a) provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

2. Rule 4.1 provides: "In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law." Rule 8.4(c) states: "It is professional misconduct for a lawyer to: * * * (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; * * * ."

3. Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client." Rule 3.2 states: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

4. Opinion 13 sets out what items are and are not included as part of client files, papers and prop-

erty. *Id.* It further states that a lawyer who has been discharged from representation may charge the former client for the costs of copying the client's files, but may not condition the return of client files on payment of copying costs or attorney's fees. *Id.*

> Rule 1.16(d) provides:
> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

5. Rule 8.1(a)(3) provides: "[A] lawyer * * * in connection with a disciplinary matter, shall not: * * * (3) knowingly fail to respond to an admissions or discipline authority's lawfully authorized

Counts III and IV are based on the following facts as alleged in the Director's supplementary petition. In June of 1994, Vincent McConnell retained Olson to represent him in an appeal hearing for social security disability benefits. The hearing was originally scheduled for February 22, 1995. However, because Olson did not provide the administrative law judge (ALJ) with McConnell's medical records until two days before the hearing, the ALJ continued the matter until April 26, 1995. The hearing took place on April 26 and the ALJ awarded McConnell disability benefits. On the same day, Olson agreed to submit a proposed decision to the ALJ within two weeks.

During May 1995, McConnell contacted Olson's office several times to inquire about the status of the decision. He was given numerous excuses why the decision had not been completed. Among other reasons, he was told: the decision had to be put on dictatape and Olson's office had to rent the proper equipment; Olson's secretary was on vacation; mistakes had been made in the decision requiring it to be redone; and Olson's secretary was having knee surgery. During June of 1995, the ALJ's law clerk contacted Olson twice and was told each time that he would be submitting the opinion.

On July 13, 1995, Olson still had not submitted a proposed decision. Thus, Mrs. McConnell sent a proposed decision to the ALJ. Because numerous changes had to be made to Mrs. McConnell's decision, the ALJ did not issue his opinion until August 7, 1995. Olson never did submit a proposed decision to the ALJ.

Prior to the April 26 hearing, McConnell had been receiving benefits from General Assistance (GA). As a result of the award of social security disability benefits, McConnell's GA benefits were twice terminated during the months of June and July 1995. In June of 1995, McConnell informed Olson about the termination of his GA benefits, but Olson took no action. On both occasions however, GA benefits were reinstated when it was determined that no written decision existed awarding McConnell social security disability benefits.

McConnell filed a complaint, with the Director's office. The Director's office sent Olson a copy of McConnell's complaint, and on two or three occasions requested a reply by mail. Olson never did.

Court III alleges that Olson's neglect of the McConnell social security matter violated Minn.R.Prof.Conduct 1.3, 3.2 and 8.4(d). Count IV alleges that Olson's failure to submit a written response to McConnell's complaint violated Minn.R.Prof.Conduct 8.1(a)(3) and 8.4(d); Rule 25, Rules on Lawyers Professional Responsibility; and *In re Cartwright*, 282 N.W.2d 548 (Minn.1979).

On December 27, 1995, Chief Justice Keith signed an order deeming admitted the allegations contained in the Director's petition and supplementary petition. Therefore, the only issue in this case is one of sanctions.

The Director recommends that Olson be indefinitely suspended with the right to apply for reinstatement after two years, provided he: (1) has complied with Rules 24 and 26, Rules on Lawyers Professional Responsibility [6] and has provided proof of his

demand for information by either providing the information sought or making a good faith challenge to the demand * * *."

Rule 8.4(d) provides: "It is professional misconduct for a lawyer to: * * * (d) engage in conduct that is prejudicial to the administration of justice * * *."

Rule 25, Rules on Lawyers Professional Responsibility provides:

It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests, including requests to: * * *

(2) Furnish in writing a full and complete explanation covering the matter under consideration;

(3) Appear for conferences and hearings at the times and places designated * * *.

*In re Cartwright*, 282 N.W.2d 548, 552 (Minn. 1979), imposed a "duty upon attorneys to cooperate in investigations of their alleged professional misconduct." This court suspended the attorney respondent in the case for six months.

6. Rule 24 covers costs and disbursements on lawyer discipline cases and Rule 26 sets out duties of disciplined, disabled or resigned lawyers.

fitness to practice law. We adopt the Director's recommendation.

The primary purpose of attorney discipline is protection of the public. In considering appropriate sanctions for misconduct, this court weighs the following factors: (1) the nature of the misconduct, (2) the cumulative weight of the disciplinary violations, (3) the harm to the public, and (4) the harm to the legal profession. Sanctions are imposed according to the unique facts of each case, but earlier cases are useful for drawing analogies.

*In re Walker,* 461 N.W.2d 219, 222 (Minn. 1990) (citations omitted).

Past cases indicate that the discipline requested by the Director is appropriate. Indeed, with regard to simply noncooperation with a disciplinary investigation, this court has stated: "Noncooperation with the disciplinary process is a serious offense in itself. * * * Noncooperation alone has warranted suspension." *In re Walker,* 461 N.W.2d 219, 223 (Minn.1990). *See also In re Neill,* 486 N.W.2d 150 (Minn.1994) (noting particular concern with the respondent's complete lack of cooperation with the ethics investigation and the fact that he had filed no answer and failed to appear at the hearing).

Two other cases involving conduct similar to Olson's, *In re Lindley,* 538 N.W.2d 697 (Minn.1995), and *In re Sigler,* 512 N.W.2d 899 (Minn.1994), also support the recommended sanction. In *Lindley,* the attorney was charged with neglect of client affairs, misappropriation of client funds, making misrepresentations to a client, and failure to cooperate with the disciplinary investigation. *Id.* at 698. This court imposed indefinite suspension and barred the attorney from reinstatement for two years. *Id.*

In *Sigler,* the respondent attorney failed to return client phone calls, failed to turn over a client file for a number of months, continued to practice law though his license was suspended, failed to appear at a client's bankruptcy meeting as promised, and failed to cooperate with the Office of Lawyers Professional Responsibility regarding an investigation of misconduct. *Id.* at 900. As in *Sigler,* this court indefinitely suspended the attorney

and barred him from reinstatement for two years. *Id.* at 902.

Finally, two aspects of this case are especially troubling to us. First, the clients whom Olson neglected were particularly vulnerable, and the results of Olson's neglect could have been quite devastating to either of them. Mavis Gowell was injured and lost part of her benefits. McConnell was receiving aid from General Assistance and twice lost those benefits due to Olson's neglect. Second, we are distressed by Olson's complete lack of cooperation with the Director's office. Indeed, he did not file a brief with this court nor did he appear at oral argument.

As a result of Olson's neglect of client matters, misrepresentations to clients, and complete noncooperation with the Director's Office, we impose the following discipline:

(1) Respondent Rodney J. Olson is suspended indefinitely from the practice of law pursuant to Rule 15 of the Rules on Lawyers Professional Responsibility (RLPR) and he shall comply with the notice requirements of Rule 26, RLPR. Respondent Olson shall not be eligible to apply for reinstatement to the practice of law before two years from the date of filing of this opinion.

(2) Reinstatement shall be conditioned on the following:

   (a) Respondent shall pay $750 in costs and disbursements to the Director pursuant to Rule 24, RLPR.

   (b) Respondent shall provide proof of his fitness to practice law by complying with the petition and hearing requirements of Rule 18(a)–(c), RLPR, and the written examination and continuing legal education requirements of Rule 18(e), RLPR.