In re Petition for **DISCIPLINARY ACTION AGAINST John Emory LEE, Jr., an Attorney at Law of the State of Minnesota.**

No. C1–82–688.

Supreme Court of Minnesota.

May 27, 1983.

John Emory Lee, Jr., pro se.

Michael J. Hoover, Director, and William J. Wernz, Asst., Lawyers Professional Responsibility Bd., St. Paul, for respondent.

PER CURIAM.

This matter is before us following the recommendation of a court-appointed referee for suspension of respondent from the practice of law. We affirm and order suspension for 1 year under prescribed conditions.

John Emory Lee, Jr., has been an attorney in Minnesota since 1956. The facts are essentially undisputed and may be summarized briefly. On May 4, 1982, Lee pled guilty in Hennepin County Municipal Court to a charge of failure to file a Minnesota state income tax return for the year 1979. The court granted a stay of imposition of sentence during which respondent paid the owed taxes, costs, interest, and penalties. Moreover, Lee was untimely in filing his state income tax returns for the years 1974 through 1979. He was also untimely in filing his federal income tax returns for those years. All taxes owed the State of Minnesota had been paid by the time of the referee's hearing. Lee claims that, by the time his brief was filed with this court, all federal taxes had been paid as well.

In the course of dealings with the Minnesota Department of Revenue, Lee indicated in March 1977 and April 1978 that he would be filing delinquent returns shortly. In fact, returns dating as far back as 1974 and 1975 were not filed until September 1981.

In addition to his tax problems, respondent Lee also had serious troubles with his accounting procedures. In 1963, he opened an account at the First National Bank of Hopkins, denominated "John E. Lee, Jr., Attorney at Law Trust Account." In June 1982, this account was designated as a business rather than a trust account by a change on the bank signature card. In 1974, respondent opened an account at the State Bank of Chanhassen bearing the title "John E. Lee, Jr., Trust Account."

It is clear that Lee has failed to maintain, for either account, the books and records required by DR 9–103(A) of the Minnesota Code of Professional Responsibility and by Opinion No. 9 of the Minnesota Lawyers Professional Responsibility Board. With respect to the Chanhassen account, the records are apparently a fragmentary collection of bank statements, canceled checks and duplicate deposit slips. The referee's memorandum describes Lee's statement that his records were a mess as "an understatement." The record supports this characterization. Lee's records are little more than a jumble of documents which he expects others to digest and understand, although, in fact, they are largely incomprehensible.

In spite of the woefully inadequate state of Lee's records, he certified to the Clerk of the Supreme Court that he maintained the books and records required by DR 9–103(A) for the years 1977 through 1981. In fact, Lee's records were not maintained in the required manner.

There is also evidence that Lee commingled his funds with clients' funds in both the Hopkins and Chanhassen accounts. Lee does not deny this, but says that the number of commingling incidents were rare and that whatever commingling occurred was momentary in nature with a debit and immediate credit out on any particular transaction. While Lee's records are insufficient to verify his claim, there is no suggestion by the director that there was ever any conversion of commingled funds.

The director also alleged that Lee failed to act promptly in a Torrens registration proceeding. There is evidence that this is the case. The client, Keith Soffa, filed a professional complaint against Lee in October 1981. Lee undertook a title registration proceeding for Soffa and his wife in early

1979. The Torrens application was not filed until December 1979. The examiner's report was issued on March 6, 1980, but Lee filed no further documents until April 30, 1981. The Torrens proceeding was finally completed on March 9, 1982. Lee contends that the only reason Soffa filed a complaint was that he had read of Lee's tax troubles in the newspaper and was fearful Lee would be barred from the practice of law before the Torrens matter was concluded. Furthermore, Lee maintains that the Torrens proceeding could have been avoided by securing an affidavit from one of Soffa's neighbors about the identity of the property's previous owner. Nevertheless, there do not seem to be any reasons for the long delay in the registration process. If, as Lee suggests, the proceeding could have been avoided merely by securing an affidavit, there is nothing in the record to justify his not having done so well before 1982.

Finally, there is the matter of non-cooperation with the director. The director wanted all of Lee's business records in a usable form. To this end, Lee was advised to hire a certified public accountant to reconstruct his transactions and put his records in order. He was further advised that this would cost at least $10,000. Lee refused, saying the $10,000 was too great a burden. Instead, he attempted to satisfy the director's request by presenting him with two large briefcases filled with check registers, canceled checks, and other materials. The director's office indicated it would not work with the documents in this form.

In the course of this disciplinary proceeding, the director submitted interrogatories to Lee on September 1, 1982. The referee later issued an order compelling discovery on November 1, 1982. Lee submitted his answers on November 16, 1982, the day before his hearings. Lee claims he never received the interrogatories mailed on September 1 and advised the director's representative of this fact on October 28, 1982. The director had filed a petition for disciplinary action against respondent on May 20, 1982, and following a hearing before this court for immediate suspension heard on August 31, 1982, this court appointed a referee to investigate all charges.

On November 17, 1982, a hearing was held before the Honorable James C. Harten, Supreme Court Referee. Referee Harten recommended either unconditional suspension from the practice of law for not less than 2 years or conditional suspension for not less than 1 year under the following conditions:

(a) that respondent Lee furnish compelling evidence of his intent to accept continuing supervision of his practice of law by a licensed attorney acceptable to the Director of Lawyers Professional Responsibility and, in fact, successfully undertake such supervision for not less than 1 year; and

(b) that respondent develop, complete, and maintain all books and records required by DR 9–103(A), such condition to be fulfilled before respondent begins his period of supervised practice.

After the issuance of the referee's report, respondent Lee ordered a hearing transcript pursuant to Rule 14 of the Rules on Lawyers Professional Responsibility in order to bring the matter before this court.

The issue raised is whether the referee's alternative recommendations were justified by respondent's conduct in failing to file tax returns, improperly maintaining records, falsely certifying the propriety of those records, commingling funds, neglecting a legal matter, and failing to cooperate with the investigation of the Director of Lawyers Professional Responsibility.

This court places great weight on the recommendations of the referee concerning disciplinary actions. *In re Fling,* 316 N.W.2d 556, 559 (Minn.1982); *In re Scallen,* 269 N.W.2d 834, 841 (Minn.1978). In the present case, there is ample evidence and precedent to justify Lee's suspension. First, Lee's failure to file tax returns is, in itself, sufficient to warrant suspension. In *In re Bunker,* 294 Minn. 47, 199 N.W.2d 628 (1972), we clearly established that failure to file federal income tax is grounds for suspension or disbarment. We have subsequently reaffirmed this position. *See, e.g.,*

In re Serstock, 316 N.W.2d 559, 561 (Minn. 1982).

*In re Sax,* 321 N.W.2d 902 (Minn.1982), involved an attorney whose conduct was similar to respondent Lee's here. Sax did not file Minnesota individual income tax returns for the years 1970–73 and 1975–78 until January 30, 1980. Sax did file tax returns for 1968 and 1974, but failed to make timely payments. Eventually, he pleaded guilty to one count of failure to file a Minnesota income tax return. Sentence was stayed and Sax paid his tax liabilities in full on March 13, 1981.

The court noted that Sax's failure to file and pay in a timely manner violated DR 1–102(A)(1) and DR 1–102(A)(6) of the Minnesota Code of Professional Responsibility. The court relied on the *Bunker* holding that the appropriate remedy in such a case is suspension or disbarment. *Sax,* 321 N.W.2d at 903. The court also considered the "extreme, extenuating circumstances" exception of *Bunker,* for which probation would be the appropriate sanction. 294 Minn. at 55, 199 N.W.2d at 632. Sax had claimed that his difficulties were the result of his alcoholism and came within the *Bunker* exception. The court rejected this claim because Sax's misconduct continued even after he stopped drinking. 321 N.W.2d at 903. In conclusion, the court adopted the referee's recommendation of indefinite suspension with leave to apply for reinstatement after 1 year if certain conditions were met. *Id.* at 904.

In the case now before the court, respondent Lee argued that he had suffered from excessive use of alcohol through 1976. Nevertheless, his misconduct continued well beyond 1976.

■ Respondent Lee's other actions only bolster the case for suspension. In *Serstock,* we stated that even "[t]hough there is no specific evidence of appropriation of clients' funds, respondent's commingling of personal and client funds in his 'trust' account, coupled with failure to maintain proper records also warrants serious professional discipline." 316 N.W.2d at 561. In *In re Shaw,* 298 N.W.2d 133 (Minn.1980),

the court addressed the issue of false certification of compliance with DR 9–103. "The false certification of compliance with DR 9–103 by respondent's signature on the attorney registration form is itself serious, and using this case as exemplary, notice is given that false certification will result in severe sanction." *Id.* at 135.

As for Lee's dilatory pursuit of the Torrens action on behalf of Keith and Leslie Soffa, it does appear to be neglect of a legal matter within the meaning of DR 6–101(A)(3). This court has ordered disbarment for *repeated* neglect of client business. *See In re Braggans,* 280 N.W.2d 34 (Minn.1979); *In re Chmelik,* 203 Minn. 156, 280 N.W. 283 (1938). Here, however, only one incident of neglect was before the referee. Moreover, there was no evidence presented that the client was prejudiced thereby. At the hearing before Referee Harten, Mr. Soffa testified that he was satisfied with the results of the Torrens proceedings, if not with the delay. Indeed, it appears that Soffa might never have filed a complaint had he not seen Lee's name in the newspaper in connection with Lee's tax situation.

Lastly, there is the matter of Lee's noncooperation with the investigation of the Director of Lawyers Professional Responsibility. This court has recently characterized a lawyer's failure to cooperate with an investigation of his or her misconduct as an "aggravating factor" in determining the appropriate discipline. *In re Larson,* 324 N.W.2d 656, 659 (Minn.1982). In *In re Cartwright,* 282 N.W.2d 548 (Minn.1979), this court ordered a 6-month suspension for refusal to cooperate in a disciplinary investigation. Here, although there is no evidence of attempted deceit or a bad faith effort to frustrate the investigation, there is evidence of non-cooperation. Lee has failed to provide financial records in a usable form. His concern over the cost of rectifying the situation is understandable, but a mistake cannot be excused solely by the expense of correcting it.

In short, Lee's failure to file tax returns in timely fashion would be enough to war-

rant suspension. His other acts of misconduct further justify the referee's recommendation.

We thus suspend John Emory Lee, Jr., from the practice of law for not less than 1 year from the date of this opinion. He may, after a period of 1 year, apply to have his suspension lifted, but only after meeting the following conditions:

1) that he apply for, take, and satisfactorily pass the special exam on lawyers' ethics offered by the Minnesota State Board of Law Examiners;

2) that respondent furnish compelling evidence of his intent to accept continuing supervision of his practice by another licensed attorney, acceptable to the director, for 1 year after his application for the lifting of the suspension; and

3) that respondent develop and complete all books and records required by DR 9–103(A) prior to re-entering practice and that he continue to maintain the same thereafter.