**In re Petition for DISCIPLINARY ACTION AGAINST William L. STOCKMAN, an Attorney at Law of the State of Minnesota.**

**No. C9–93–353.**

Supreme Court of Minnesota.

July 2, 1993.

Marcia A. Johnson, Director of Office of Lawyers Professional Responsibility, Betty M. Shaw, Sr. Asst. Director, St. Paul, for directors.

William L. Stockman, pro se.

PER CURIAM.

The Director of the Lawyers Professional Responsibility Board filed a petition for

disciplinary action against the respondent, William L. Stockman, on January 22, 1993. The petition alleged that respondent had committed the following counts of unprofessional conduct warranting public discipline: (1) trust account violations; (2) lack of diligence, failure to communicate, and false notarization with respect to his attempt to clear title on a piece of property owned by his clients; and (3) failure to cooperate with the Director's Office. Pursuant to Rule 13, Rules on Lawyers Professional Responsibility (RLPR), respondent was given 20 days to respond to these charges. After he failed to answer these allegations, this court, by order dated March 11, 1993, deemed the allegations in the Director's petition to be admitted. On March 8, 1993, the Director filed a supplemental petition for disciplinary action against respondent, alleging additional trust fund violations, neglect of clients, further non-cooperation, and the unauthorized practice of law.

The respondent, William L. Stockman, who currently resides in Duluth, Minnesota, has been licensed to practice law in Minnesota since October 21, 1983. He is presently suspended from the practice of law for non-payment of the attorney registration fee but has continued to practice law in violation of this suspension.

The allegations contained in the petition for discipline against respondent arise out of respondent's trust account violations as well as his representation of another client in attempting to clear title to a piece of property owned by the client.

On February 15, 1991, respondent opened a trust account at the St. Louis Bank in Duluth, Minnesota. Respondent opened this account intending to use it as a personal and business account. He opened a trust account, however, because the bank refused to open a business or personal account for him because his previous account at First Bank Duluth had been closed for excessive non-sufficient funds (NSF) activity.

Once the trust account was opened, respondent proceeded to commingle his personal funds with $1,800 of client trust fund money. Respondent also failed to maintain *any* of the books and reports required by Rule 1.15, Minnesota Rules of Professional Conduct (MRPC), despite his certification on his 1990 and 1991 attorney registration statements that he was maintaining the required trust account books and records.

Respondent also had several trust account overdrafts despite the fact that he never made any disbursements to clients from the original trust account balance of $1,800. Beginning on December 24, 1991, the trust account was overdrawn on numerous occasions. Between April 13, 1992 and May 1, 1992, the bank returned 14 of respondent's trust account checks for NSF. Seven of those checks were written on the account after it had been closed by the bank. Thus, the evidence demonstrates that respondent's repeated trust account violations, including misrepresentation, commingling of funds, and repeated overdrafts, violated Rules 1.15(a), 1.15(b)(3), 1.15(h), 1.16(b)(3), and 8.4(c), MRPC.

On June 12, 1987, a married couple retained respondent to clear title to their property and gave respondent a $300 retainer. The closing took place on June 24, 1987, and the title company held $7,500 in escrow, giving respondent's clients two years to clear the title defects.

The couple attempted to contact respondent every two months on this matter, but respondent failed to return any of their phone calls. Finally, when the couple contacted him personally, respondent assured them that he was working on the case and that they should not worry about their escrow money because it was earning interest. Respondent eventually drafted quit claim deeds for the couple and for their children in order to commence a torrens proceeding. The couple delivered the unsigned deeds to each of their children, obtained the requisite signatures, and returned the deeds to respondent, who falsely notarized them showing the date of December 6, 1989.

In March 1990, the couple contacted respondent, who admitted that he had done little on the case but would get to it immediately. On June 29, 1990, respondent told

the couple that the escrow was not earning interest and that he was too busy to handle the case. On July 20, 1990, respondent, with the couple's permission, referred the case to another attorney, who completed the torrens proceeding.

Respondent's neglect in failing to pursue the torrens proceeding and lack of communication violated Rules 1.3 and 1.4, MRPC. His conduct in falsely notarizing the signatures violated Rules 8.4(c) and (d), MRPC.

In addition to the above violations, respondent also failed to cooperate with the Director's Office in violation of Rule 8.1(a)(3), MRPC, and Rule 25, RLPR. Although respondent agreed to provide all trust account books and records to the Director by June 1, 1992, respondent failed to honor his promise. Although the Director finally received most of the bank statements and check carbons by July 23–24, 1992, the remainder of the statements and checks were never sent. On September 2, 1992, respondent met with the Director's Office and gave them his trust account check register for the period from November 1991 to April 1992. After this meeting, despite repeated requests for bank authorizations and further information necessary for the disciplinary investigation, the Director never received a response to these letters from respondent. Respondent did not appear at a pre-hearing meeting scheduled by the Director for December 28, 1992, nor did he contact the Director's Office to indicate that would be unable to attend the scheduled meeting.

The Director's supplementary petition contains several additional allegations of misconduct. Among these include evidence of further trust account violations, failure to return trust account money to a client, engaging in the practice of law after being suspended for failure to pay his attorney registration fee, and further non-cooperation with the Director's Office.

Because the allegations in the Director's initial petition are deemed admitted due to respondent's failure to respond within the 20–day time limit, the only issue before this court is determining the appropriate sanction to impose.

This court has held that trust account violations will be treated very seriously and will usually warrant a lengthy suspension. This court has stated:

[W]e feel compelled to advise the bar that misuse of trust accounts in the future will (1) almost invariably result in lengthy suspension at the very least and disbarment at worst and (2) that retainer fees not immediately placed in a trust account will be looked upon with suspicion. * * * Furthermore, attorney fees for payment of services to be performed in the future must be placed in a trust account and removed only by giving the client notice in writing of the time, amount, and purpose of the withdrawal, together with a complete accounting thereof.

*In re Lochow*, 469 N.W.2d 91, 98 (Minn. 1991). Respondent's pattern of abuse of his client trust accounts meets the conditions outlined in *Lochow*. Respondent opened the trust account under false pretenses, commingled client funds, kept no accounting records, and accumulated many trust account overdrafts despite the fact that the account should always have contained not less than $1,800 of client funds.

Applicable case law suggests that a suspension is warranted for such conduct. In *In re Miley*, 486 N.W.2d 759, 761 (Minn. 1992), this court stated that "we will not tolerate abuse of trust accounts, especially when, as here, the abuse is sustained and perpetrated in knowing violation of professional rules and an order of this court." In that case, we held that respondent's conduct justified an indefinite suspension without the right to apply for reinstatement for two years. *Id.*

This court has also noted that, even in the absence of specific evidence of misappropriation, suspension and even disbarment is an appropriate sanction:

Though there is no specific evidence of appropriation of clients' funds, respondent's commingling of personal and client funds in his "trust" account, coupled with failure to maintain proper records also warrants serious professional discipline. *In re Bialick*, 298 Minn. 376,

215 N.W.2d 613 (1974). Unlike *In re Shaw*, 298 N.W.2d 133, 135 (Minn.1980), where the commingling was a single event and lasted only a short time, here the violations were continuous and repeated. Finally, respondent's inexcusable lack of cooperation with the Hennepin County Ethics Committee evidences an indifference if not disregard of an attorney's responsibilities to his profession.

*In re Serstock*, 316 N.W.2d 559, 561 (Minn. 1982). The *Serstock* case resulted in disbarment, and although Serstock's conduct in that case included the additional allegation that his failure to resolve his income tax liabilities violated the terms of his probation, many of the other allegations were similar to the ones alleged here, such as continued neglect of clients' affairs, commingling of funds, failure to maintain proper records, false representations, and lack of cooperation.

In addition to the trust account violations, respondent's neglect, non-communication, and false notarization of deeds also warrants public discipline. False notarization of documents, by itself, usually results in public discipline. *See, e.g., In re Johnson*, 462 N.W.2d 598 (Minn.1990); *In re Bieter*, 462 N.W.2d 595 (Minn.1990). While neglect of a single client matter does not usually warrant a suspension, such discipline may be justified when it is coupled with many other charges of professional rule violations.

Finally, non-cooperation with the Director's Office is serious misconduct warranting discipline. This court has noted that all attorneys have the duty to cooperate with the disciplinary process:

> Every licensed attorney at law has the ethical duty to cooperate in the investigation and resolution of complaints alleging unethical conduct. Failure to meet this obligation, in and of itself, may result in public discipline. *In re Cartwright*, 282 N.W.2d 548 (Minn.1979). By refusing to participate in the investigation of these complaints, respondent not only has violated that duty, but has arrogantly demonstrated her scorn for the ethical pre-

cepts of this profession and its disciplinary process.

*In re Jones*, 383 N.W.2d 303, 307 (Minn. 1986). In *In re Cartwright*, 282 N.W.2d 548 (Minn.1979), this court imposed a six-month suspension for a flagrant failure to cooperate. While the penalty for non-cooperation may be mitigated if the attorney initially fails to cooperate but later fully participates in the proceedings, *see In re Wareham*, 413 N.W.2d 820, 822 (Minn. 1987), respondent in this case did not cooperate with the Director's investigation. Respondent failed to provide complete bank records or authorizations, did not answer any of the Director's allegations, failed to appear for a pre-hearing meeting, and ignored the Director's repeated letters and contacts.

In summary, respondent committed numerous trust account violations, made false representations, commingled funds, neglected client files, continued to practice law after his suspension, and failed to cooperate with this disciplinary proceeding. We believe that respondent's numerous violations show a pattern of conduct which warrants an indefinite suspension from the practice of law.

It is, therefore, the judgment of this court:

1. That Respondent, William L. Stockman, is indefinitely suspended from the practice of law and that he shall be ineligible to apply for reinstatement for a period of not less than two years after the date of this opinion;

2. That the reinstatement hearing provided in Rule 18, RLPR, is not waived, and reinstatement shall be conditioned upon the following:

(a) Respondent shall successfully complete the professional responsibility portion of the bar examination pursuant to Rule 18(e)(2), Rules on Lawyers Professional Responsibility (RLPR);

(b) Respondent must satisfy the continuing legal education requirements contained in Rule 18(e)(4), RLPR;

(c) Respondent must pay all past due and current attorney registration fees;

(d) Respondent shall comply with Rule 26, RLPR;

(e) Respondent must provide clear and convincing proof that all client funds have been properly disbursed, that no client is owed any money, and that any Client Security Fund claim has been satisfied;

(f) Respondent must demonstrate a sustained period of financial responsibility in managing his personal and business affairs; and

(g) Respondent shall pay to the director the sum of $750.00 in costs and $40.00 in disbursements pursuant to Rule 24, RLPR, in connection with these present proceedings, and shall provide notice of this order to all clients together with an affidavit of proof of compliance.

IT IS SO ORDERED.