**In re Petition for DISCIPLINARY ACTION AGAINST Dennis E. SZYMIALIS, an Attorney at Law of the State of Minnesota.**

No. C4–95–2631.

Supreme Court of Minnesota.

Jan. 9, 1997.

Office of Lawyers Professional Responsibility, Marcia A. Johnson, Director, Candice M. Hojan, Sr. Asst. Director, St. Paul, for appellant.

Dennis E. Szymialis, Duluth, pro se.

## OPINION

### PER CURIAM.

At the direction of a panel of the Lawyers Professional Responsibility Board, the Director of the Office of Professional Responsibility filed a petition and supplemental petition for disciplinary action against respondent Dennis E. Szymialis. The petitions related to Szymialis' conduct with respect to three of his clients, and also contained allegations relating to Szymialis' failure to cooperate with disciplinary authorities.

The Director presented numerous allegations of professional misconduct against Szymialis, including claims that he used oral or inadequate fee agreements, charged an unreasonable fee and failed to refund an unearned advance fee, failed to use proper accounting records and procedures, made misrepresentations to a client, represented a client using means with no substantial purpose other than to burden a third person, filed a conciliation court action against a client while continuing to represent the client, failed to communicate adequately with clients, failed to release a client file, incompetently represented a client, and failed to cooperate with the Director's requests for information during the disciplinary investigation. The Director alleged that Szymialis' conduct violated Minnesota Rules of Professional Conduct 1.1, 1.4, 1.5(a) and (c), 1.7, 1.15(b), 1.16(d), 3.1, 3.4(c), 8.1(a)(3), and 8.4(d); Lawyers Professional Responsibility Board Opinions 9, 11, 13, and 15; and Rule 25, Rules on Lawyers Professional Responsibility (RLPR).

Szymialis answered the petition, but failed to answer the supplemental petition or the Director's request for admissions. The referee appointed by this court to hear the matter granted the Director's motions for orders deeming the allegations in the supplemental petition and the matters in the request for admissions admitted under Rule 13(b), RLPR and Minn.R.Civ.P. 36.01. After a hearing, the referee determined that Szymialis' misconduct had occurred as alleged by the Director. Neither the Director nor Szymialis ordered a transcript within ten days of the filing of the referee's findings of fact,

conclusions and recommendation, and thus the findings and conclusions are conclusive under Rule 14(e), RLPR. This court set the matter on for hearing solely to determine the appropriate disciplinary sanction for Szymialis' misconduct. The Director recommended that Szymialis be indefinitely suspended from the practice of law without the right to apply for reinstatement for two years. We agree with the recommendations of the Director and the referee and conclude that indefinite suspension with no leave to apply for reinstatement for two years is warranted.

## I.

The Director of the Office of Professional Responsibility cites several instances of professional misconduct by Szymialis in his representation of three clients. In the first matter, Frank A. Laurich contacted Szymialis to represent him when he was hit by a car in May 1992 while riding his bicycle. Szymialis orally agreed to represent Laurich for a contingent fee of one-third of any recovery, but did not reduce the contingent fee agreement to writing. The automobile insurer denied Laurich's claim, but Szymialis failed to inform Laurich of the denial. Szymialis subsequently wrote to the bicycle manufacturer and contacted an expert witness in preparation for a products liability lawsuit without advising Laurich that he had done so. Szymialis' failure to reduce the contingent fee agreement to writing violated Minn. R.Prof. Conduct 1.5(c), and his failure to advise Laurich of the status of his case violated Minn.R.Prof. Conduct 1.4.

In December 1993, Szymialis advised Laurich that he would defend him on a separate felony assault matter for a nonrefundable fee of $2,000, but did not enter into a written nonrefundable fee agreement concerning the representation. In January 1994, Szymialis received three $100 cash payments from Laurich when he accompanied Laurich to an automated teller machine. Szymialis did not give Laurich receipts for these cash payments and did not record the payments in a fees book. The referee concluded that this behavior violated Minn.R.Prof. Conduct 1.15 and Law.Prof.Resp.Bd.Ops. 9 and 15.

In January 1994, Szymialis also advised Laurich that he had overpaid his bail by $500 and proposed splitting the $500 refund when Szymialis got it back from the court. Szymialis did not explain to Laurich that the reason for the overpayment was Laurich's previous posting of $500 in bail for a misdemeanor assault charge that was dismissed when Laurich was subsequently charged with felony assault for the same incident. Szymialis' misrepresentation of the status of the bail funds in order to obtain payment of his fee violated Minn. R. Prof. Conduct 8.4(c).

Szymialis contacted Laurich's mother on at least two occasions to ask her to pay Laurich's attorney fees or to lend Laurich the money to pay the fees. Laurich's mother refused Szymialis' request and Laurich specifically asked Szymialis not to contact his mother again, but Szymialis ignored the request. In February 1994, after the felony assault charge was dismissed, Szymialis again contacted Laurich's mother to ask that she pay him attorney fees from the $5,000 felony bail money when it was refunded. In contacting Laurich's mother after Laurich specifically instructed him not to do so, Szymialis violated Minn.R.Prof. Conduct 4.4.

The next month, Szymialis brought a conciliation court action against Laurich for an additional $2,000 Laurich allegedly owed for Szymialis' representation of Laurich on the criminal charges. At the time, Laurich was still Szymialis' client in the personal injury matter. Laurich subsequently terminated Szymialis' representation in the personal injury matter and retained a substitute attorney. The substitute attorney requested that Szymialis deliver Laurich's client file. Szymialis did deliver an x-ray and a book, but refused to release the rest of the file without payment of his fee on the criminal charges. Filing a conciliation court action against a current client violated Minn.R.Prof. Conduct 1.7, and failing to return the client file violated Minn.R.Prof. Conduct 1.16(d) and Law. Prof.Resp.Bd.Ops. 11 and 13.

In the second client matter, Timothy Dorsher retained Szymialis in April 1995 to represent him on felony drug possession charges. Szymialis did not file a notice of appearance, did not make any disclosures as

required by Minn.R.Crim.P. 9, and did not file and serve written motions as required by Minn.R.Crim.P. 10, but nonetheless appeared with Dorsher at his combined arraignment and omnibus hearing on May 10, 1995. Szymialis was unprepared for the omnibus hearing and presented several groundless oral motions. The referee concluded that Szymialis' representation of Dorsher at the May 10 hearing violated Minn.R.Prof. Conduct 1.1, 3.1, 3.4(c), and 8.4(d).

In the third matter, Peter Welsh signed a retainer agreement to pay Szymialis $3,000 to represent him on felony charges in 1992. Szymialis' retainer agreement did not advise Welsh in the final paragraph whether the funds would be held in a trust account and whether Welsh could receive a refund of the fees.

Welsh left the State of Minnesota and failed to appear on the day set for his trial. Szymialis did appear and claims that he then made an oral motion to withdraw from the case, but there is no record of such a motion and the court did not enter a written order. When Welsh returned to Minnesota, the district court appointed a public defender to represent him. The court then allowed Szymialis to withdraw as Welsh's counsel, but determined that Szymialis could keep only $1,000 of the $3,000 fee that Welsh had paid and should return $1,000 to Welsh and pay the balance to the State of Minnesota to reimburse the public defender. Szymialis was unable to refund the fees, so the court ordered entry of judgment against him in favor of Welsh and the State of Minnesota. To date, Szymialis has not paid either judgment.

By using an inadequate retainer agreement, Szymialis violated Minn.R.Prof. Conduct 1.4(b) and Law.Prof.Resp.Bd.Op. 15. In addition, the referee concluded that Szymialis charged an unreasonable fee in violation of Minn.R.Prof. Conduct 1.5(a) and Law.Prof. Resp.Bd.Op. 15. By failing to refund any fee upon withdrawing from representation, Szymialis also violated Minn.R.Prof. Conduct 1.16(d).

On or about October 11, 1995, the Director sent Szymialis a notice of investigation pursuant to a letter from the public defender concerning Szymialis' representation of Welsh. The Director requested a written explanation of the matter within two weeks. Szymialis did not respond. The Director subsequently sent Szymialis a second letter advising him that Welsh had also filed a complaint, and again requested an explanation within two weeks, but Szymialis did not respond. The Director wrote Szymialis a third time requesting a written response to the Welsh complaint within one week and notifying Szymialis that failure to cooperate may be charged as separate misconduct under Rule 25, RLPR. Szymialis again failed to respond. The Director wrote Szymialis a fourth time, requesting a written response to the Welsh complaint within ten days and again advising him that failure to cooperate with the investigation could itself be grounds for discipline. Once again, Szymialis failed to respond. Such failure to respond to the Director's requests for information violated Minn.R.Prof. Conduct 8.1(a)(3) as well as Rule 25, RLPR.

On October 23, 1995, the Director presented evidence before a panel of the Lawyers Professional Responsibility Board in support of charges against Szymialis in the Laurich and Dorsher matters. Szymialis had notice of the panel hearing, but failed to attend. The panel found probable cause for public discipline on all charges, and on December 15, 1995, the Director filed a petition for disciplinary action against Szymialis. Szymialis filed an answer to the petition denying most of the Director's allegations and counterclaiming that the petition was frivolous and violated the Americans with Disabilities Act and federal constitutional law.

The Director filed a supplemental petition for disciplinary action on February 15, 1996, alleging professional misconduct based on Szymialis' representation of Peter Welsh and his failure to respond to the Director's notice of investigation and requests for information in the Welsh matter. Szymialis did not file an answer to the supplemental petition. The Director also served a request for admissions upon Szymialis on March 11, 1996, but Szymialis did not answer or object to any matter in the request for admissions.

This court referred the Director's petition and supplemental petition for disciplinary action against Szymialis to a referee to make and report findings of fact and recommendations for disposition. On May 2, the referee granted the Director's motion for an order deeming the allegations in the supplemental petition admitted pursuant to Rule 13(b), RLPR. The referee also granted the Director's motion for an order that all matters contained in the Director's request for admissions be deemed admitted pursuant to Minn. R.Civ.P. 36.01.

The referee set the matter for hearing to take place on May 9, 1996. Szymialis appeared at the hearing and stated that he had not received a copy of the referee's May 2 order. Upon receiving a copy of the May 2 order together with an affidavit of mailing, Szymialis stated, "This is a railroading, I'm leaving," and then abruptly left before evidence was presented. The referee waited for Szymialis to return, but upon Szymialis' failure to return, the hearing continued in his absence.

After the hearing, the referee made his findings of fact, conclusions and recommendation, concluding that Szymialis had violated several rules of professional conduct in representing Laurich, Dorsher, and Welsh and in failing to respond to the Director's notice of investigation and requests for information in the Welsh matter. The referee recommended that Szymialis be suspended indefinitely from the practice of law and that he be ineligible to apply for reinstatement for two years, stating:

> I would not recommend indefinite suspension solely because of [Szymialis'] misconduct in the Laurich, Dorsher and Welsh matters.
>
> The more serious misconduct is [Szymialis'] failure to respond to the Director's inquiry, failure to answer the supplemental petition, failure to respond to the Director's request for admissions, and failure to participate in the May 9 hearing.
>
> The cumulative misconduct, particularly [Szymialis'] disturbing disregard for the disciplinary process, warrants a recommendation of indefinite suspension.

Neither the Director nor Szymialis ordered a transcript within ten days of the filing of the referee's findings of fact, conclusions and recommendation; therefore, the referee's findings and conclusions are conclusive pursuant to Rule 14(e), RLPR.

This court set a time for hearing upon the record, briefs, and arguments pursuant to Rule 14(g), RLPR. Szymialis did not serve or file a brief and failed to appear at oral argument. The record presented to this court reflects that Szymialis has no prior disciplinary history and that he is currently on continuing legal education restricted status.

## II.

The only issue before this court is the appropriate discipline for Szymialis' professional misconduct. The purpose of attorney discipline proceedings is not to punish the attorney. *In re Erickson,* 506 N.W.2d 628, 629 (Minn.1993). Rather, attorney discipline proceedings are intended to "'protect the public from attorneys who are unable to properly discharge their duties'" and to "deter future attorney misconduct." *In re Haugen,* 543 N.W.2d 372, 375 (Minn.1996) (quoting *In re Montpetit,* 528 N.W.2d 243, 246 (Minn.1995)).

This court places great weight on recommendations made by a referee, but this court alone has the final responsibility to determine the appropriate discipline for attorney misconduct. *In re Boyd,* 430 N.W.2d 663, 664 (Minn.1988). In determining the appropriate discipline, this court "weighs the specific facts of the case in addition to any mitigating or aggravating circumstances." *Haugen,* 543 N.W.2d at 375 (citing *In re Isaacs,* 451 N.W.2d 209, 211 (Minn.1990)). In doing so, this court considers four factors: "the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the potential harm to the public, and the harm to the legal profession." *Id.* (citing *In re Lochow,* 469 N.W.2d 91, 96 (Minn.1991)). An attorney's prior disciplinary history is also relevant to determining appropriate discipline. *In re Hartke,* 529 N.W.2d 678, 683 (Minn.1995). This court strives for consistency in determining the appropriate disci-

pline, and prior caselaw "is helpful only as an analogy" because "the facts of each case independently dictate the appropriate discipline." *In re Wyant*, 533 N.W.2d 397, 401 (Minn.1995).

■ An attorney has an ethical duty to cooperate in the investigation and resolution of complaints of professional misconduct. *In re Gorgos*, 382 N.W.2d 857, 858 (Minn.1986). Failure to cooperate with the disciplinary process is "a serious offense in itself." *In re Walker*, 461 N.W.2d 219, 223 (Minn.1990). In *In re Cartwright*, an attorney whose only act of misconduct involved his "repeated refusals to cooperate with the appropriate disciplinary authorities" received a six-month suspension from the practice of law. *In re Cartwright*, 282 N.W.2d 548, 551–52 (Minn. 1979).

■ An attorney's failure to cooperate with a disciplinary investigation can also warrant indefinite suspension. *In re Cowan*, 540 N.W.2d 825, 827 (Minn.1995) (citations omitted). This court regularly imposes indefinite suspension upon attorneys, like Szymialis, with no prior disciplinary history who failed to cooperate with the Director's efforts to investigate other misconduct.[1] Recently, in *In re Olson*, this court imposed indefinite suspension with no leave to apply for reinstatement for two years upon an attorney who neglected two "particularly vulnerable" clients, made misrepresentations to clients, and exhibited "complete noncooperation with the Director's office." *In re Olson*, 545 N.W.2d 35, 38 (Minn.1996). In *In re Lindley*, this court also ordered indefinite suspension with no leave to apply for reinstatement for two years. *In re Lindley*, 538 N.W.2d 697, 698 (Minn.1995). The attorney in *Lindley* "seriously neglect[ed]" a client by failing to communicate with her and act on her behalf, misappropriated funds from his trust

account, and failed to cooperate with the Director's investigation or respond to the petition for disciplinary action. *Id. See also In re Stockman*, 502 N.W.2d 209, 212 (Minn. 1993) (ordering indefinite suspension with no eligibility to apply for reinstatement for two years); *In re Pearson*, 352 N.W.2d 415, 420 (Minn.1984) (suspending attorney indefinitely with no right to apply for readmission for two years).

In *In re Kinnunen*, this court ordered indefinite suspension with no leave to apply for reinstatement for 18 months for an attorney who failed to pursue his clients' claims and return their phone calls, failed to maintain his trust account, and repeatedly refused to cooperate in the investigation of his misconduct. *In re Kinnunen*, 502 N.W.2d 773, 774–75 (Minn.1993). The court in *Kinnunen* stated:

> When non-cooperation is coupled with respondent's other misconduct, indefinite suspension is a reasonable and necessary sanction, especially where respondent has offered no evidence of mitigating circumstances.

*Id.* at 775.

Only rarely, in absence of a stipulation,[2] has this court imposed less than indefinite suspension upon an attorney with no prior disciplinary history who did not cooperate with the Director's investigation of the attorney's misconduct. *See Gorgos*, 382 N.W.2d at 858 (suspending attorney from practice of law for six months for neglecting two client matters and for failing to cooperate with the Director's investigation into such misconduct); *In re Larson*, 210 Minn. 414, 416–18, 298 N.W. 707, 708–09 (1941) (imposing probationary period of three years for attorney's careless failure to file foreclosure record, failure to respond to letters and communications from bar association and ethics committee,

1. This court has also imposed indefinite suspension upon attorneys who engaged in "sporadic" noncooperation with a disciplinary investigation. *See In re Logan*, 442 N.W.2d 312, 316–17 (Minn. 1989); *In re Flanery*, 431 N.W.2d 115, 119 (Minn.1988).

2. In accordance with a stipulation between the attorney and the Director, this court routinely imposes a lesser sanction than indefinite suspension upon attorneys with no prior disciplinary

history who failed to cooperate with the disciplinary process. *See, e.g., In re Kludt*, 539 N.W.2d 392, 393 (Minn.1995) (30-day suspension); *In re Haberman*, 531 N.W.2d 840, 840 (Minn.1995) (public reprimand and two-year supervised probation period); *In re Oberg*, 522 N.W.2d 922, 923 (Minn.1994) (public reprimand and two-year supervised probation with conditions).

and failure to keep promises to state board of law examiners).

Recently, in *In re Grzybek*, this court ordered a six-month suspension from the practice of law for an attorney who failed to respond promptly to his clients' requests for information and for their property, and who failed to cooperate with disciplinary authorities. *In re Grzybek*, 552 N.W.2d 215, 217 (Minn.1996). Gryzbek's misconduct, however, caused "no direct injury to his clients." *Id.* In addition, Gryzbek's noncooperation consisted of two incomplete responses to the inquiries of disciplinary authorities and failure to appear at the prehearing meeting or answer the Director's petitions, but Gryzbek did appear at oral argument and attempted to explain his noncooperation. *Id.* at 216.

In this case, Szymialis has engaged in numerous acts of professional misconduct which, viewed cumulatively, reflect his inability to properly discharge his duties as an attorney. Implementing proper accounting and communication procedures might prevent some of his disciplinary violations from recurring in the future. Other disciplinary violations, however, caused direct harm to his clients and reveal more serious competence and fee mishandling issues. For example, Szymialis still owes Welsh $1,000 in unearned attorney fees.

In failing to cooperate with the Director's investigation, Szymialis demonstrated a "complete disdain for the disciplinary process." *See Cartwright*, 282 N.W.2d at 552. He did not respond to the Director's repeated requests for information regarding the Welsh matter, he did not answer the Director's supplemental petition or the request for admissions, he abandoned the hearing, he did not follow the procedure for challenging the referee's findings and conclusions, and he did not file a brief or attend oral argument before this court. Szymialis has offered no evidence of mitigating factors, despite repeated opportunities to explain his behavior. *See Kinnunen*, 502 N.W.2d at 775. It is apparent that Szymialis' lack of cooperation with the Director's investigation exacerbates the gravity of his misconduct. We have no choice but to sanction him as though all of the misconduct occurred as

alleged. We conclude that the appropriate discipline is indefinite suspension from the practice of law with no eligibility to apply for reinstatement for two years. Accordingly, we order that:

1. Respondent Dennis E. Szymialis is hereby suspended from the practice of law indefinitely pursuant to Rule 15, RLPR. Respondent shall not be eligible to apply for reinstatement to the practice of law for a period of two years from the date of filing of this opinion.

2. Respondent shall comply with the notice requirements of Rule 26, RLPR.

3. Respondent shall pay $750 in costs and disbursements to the Director pursuant to Rule 24, RLPR.

4. Before reinstatement to the practice of law, respondent shall provide proof of his fitness to practice law by complying with the petition and hearing requirements of Rule 18(a)–(c), RLPR and the written examination and continuing legal education requirements of Rule 18(e), RLPR.